■ ANTONIA DEMAS, Respondent, v DAVID LEVITSKY et al., Appellants. [738 NYS2d 402] —Mercure, J. Appeal from an order of the Supreme Court (O'Shea, J.), entered December 19, 2000 in Tompkins County, which denied defendant Cornell University's motion to dismiss the complaint as time barred and denied defendant David Levitsky's cross motion for summary judgment dismissing the complaint.

In the early 1970s, plaintiff developed an interest and some expertise in the field of nutrition, particularly the subject of serving nutritious and healthy food to school children.[1] Plaintiff went on to obtain her Bachelor's degree in community nutri-

---

1. The greater part of our statement of facts is taken from the allegations of the voluminous complaint, which for our present analysis shall be taken as true.

tion and, in 1977, began working with teachers at the Trumansburg Elementary School in Tompkins County to improve its school lunch program and develop classroom instruction involving students in the preparation and consumption of nutritious, healthy foods. By 1988, plaintiff had a significant background in educating children about the foods of different cultures, sound nutrition for children, and the utilization of the Federal School Lunch Program as a vehicle for improving the eating habits of American children and their families.

In 1988, plaintiff was admitted to a Master's program in the College of Human Ecology at defendant Cornell University. After writing a thesis entitled "A Framework for a Handbook of Food Study for Elementary Schools," she received her Master's degree in professional studies. Plaintiff worked for a year as a nutrition educator under the auspices of Cornell Cooperative Extension Services and then returned to Cornell for doctoral studies in the College of Agriculture and Life Sciences. According to plaintiff, the goal of her doctoral studies was to refine and validate, by means of scientific research and analysis, her prior work in the area of food studies and education for children and to provide her with the academic credentials and reputation to continue that work at the highest professional level. As her dissertation topic, plaintiff proposed a study, to be conducted in the Trumansburg schools, to determine whether children would be more inclined to eat healthy foods if they first learned about them, prepared them and actually ate them in the classroom and then later received the same foods as part of their school lunches.

In August 1991, plaintiff selected her graduate advisory committee of three full professors, each of whom contributed to the refinement of plaintiff's idea. In the first half of 1993, plaintiff met on numerous occasions with the Trumansburg School Board, teachers and administrators to arrange for the implementation of her project and to schedule operational details. During the 1993-1994 school year, plaintiff spent over 100 days at the Trumansburg Elementary School conducting research with the help and cooperation of the school staff, parents and volunteers. She also did actual teaching and oversaw the food consumption measurements, which were carried out by volunteers whom she had recruited and trained. In June 1994, plaintiff received national awards for her work at Trumansburg from the Society for Nutrition Education and the United States Department of Agriculture (hereinafter USDA), which encouraged her to apply for a grant in order to continue her research. Plaintiff began writing her dissertation in July 1994,

with the intention that her work be completed in time to obtain her degree in January 1995, largely because her financial situation had become dire and she needed to move from unpaid research to a paid position. Viewing a USDA grant as an important source of funds but having been advised that every grant application required a senior faculty sponsor, plaintiff turned to defendant David Levitsky, a professor of nutritional sciences at Cornell who had previously shown great interest in her work and eventually became a member of her graduate advisory committee, to serve as principal investigator on the grant proposal. It was plaintiff's clear understanding, however, that she would be named as coprincipal investigator.

Throughout the fall of 1994, plaintiff attended numerous meetings in furtherance of the application and developed and planned the infrastructure of the study. However, because she was also writing her dissertation and had no source of income, plaintiff asked Levitsky to arrange for her to be compensated for her work on the grant. Levitsky refused, characterizing her work on the proposal as an investment. In order to permit her to concentrate on her dissertation, plaintiff provided Levitsky with her contacts at the USDA so that he could explore further sources of funding. Levitsky in turn agreed to submit the grant application in time to have the funds available by January 1995 so that plaintiff could commence her research as soon as her dissertation was completed. In January 1995, plaintiff completed her copyrighted dissertation. She was thereafter awarded her Ph.D. in education and hired by Cornell as a research associate. It was subsequently discovered, however, that Levitsky had not submitted the grant proposal until January 5, 1995, which caused plaintiff great embarrassment because people who had been hired to participate in the study could not be paid.

Then, in February 1995, plaintiff discovered that the grant application not only failed to name her as coprincipal investigator, it did not even mention her by name, and salaries were sought only for Levitsky as project leader and for a "research associate." Moreover, the application allegedly plagiarized and misappropriated extensive portions of plaintiff's dissertation, and Levitsky took full credit for plaintiff's research during class lectures and professional and public speaking engagements, and falsely claimed that he had won awards for the Trumansburg research. Consequently, plaintiff lodged a complaint with Cornell's ombudsman, who issued a report in April 1995 substantiating her claims that Levitsky had failed to properly credit her contributions. Because he was unable to

determine how much of the research was attributable to plaintiff's theory and methodology and how much was attributable to Levitsky's quantitative expertise, however, the ombudsman stopped short of concluding that Levitsky had committed any serious infractions, but recognized that his behavior was "suggestive of a pattern."

Shortly thereafter, in May 1995, plaintiff's employment on the grant study was terminated because Levitsky supposedly received numerous complaints about her behavior. Plaintiff, however, claims that she was fired because she outlasted her usefulness, as Levitsky had by that time extracted all the information he could about her technique, methodology and research protocol. In order to defuse the situation, the ombudsman negotiated a written agreement between the two which was executed in September 1995. The agreement required that plaintiff be listed as a consultant in all published reports and that Levitsky properly refer to plaintiff's work in all published works and public presentations. It further required that Levitsky write a letter of apology to the USDA acknowledging plaintiff's contributions, and he was to promptly and properly edit drafts that plaintiff prepared for publication.

Levitsky sent the required letter but also sent a preemptive e-mail warning the USDA that it would be receiving a "strange letter" that had been written to placate a disgruntled employee who had been dismissed because she was difficult to work with. Additionally, although he was supposed to assist in the publication of articles authored by plaintiff, Levitsky wrote to an academic journal in May 1996 stating that any articles submitted by plaintiff should name him as coauthor. As a result, the journal refused to publish the article until the charges of "intellectual dishonesty" were resolved. Ultimately, in February 1997, Cornell informed the journal that Levitsky was withdrawing all claims to the manuscript's authorship.

In October 1995, plaintiff filed a grievance with Cornell asserting that Levitsky had violated Cornell's policies on academic misconduct. In May 1996, well after the 120-day period prescribed for such investigation, Peter Stein, Cornell's Dean of Faculty, issued a report stating that a committee (hereinafter referred to as the Coffman Committee) should investigate whether Levitsky failed to properly acknowledge plaintiff's contributions to the research. Notably, however, he concluded that Levitsky did not misappropriate plaintiff's research protocol and methodology, stating that "Levitsky's preemption of [plaintiff's] ideas * * * lies within the boundary of permissible academic entrepreneurial behavior" and did not warrant further investigation.

Thereafter, the Coffman Committee reported that Levitsky had repeatedly failed to acknowledge plaintiff's contributions and disagreed with Stein's assessment of the situation, concluding that the "preemption" of ideas was inappropriate behavior for Cornell faculty. In October 1996, however, Cornell issued a final report finding that, although Levitsky was "insensitive and careless" in failing to attribute the idea for the research to plaintiff and a general pattern of lack of attribution could be constructed, none of the actions rose to the level of plagiarism or misconduct. Curiously, although Levitsky was cleared of all wrongdoing, he was required to submit all future grant proposals, papers and reports to Cornell to ensure that plaintiff's work was properly attributed, and he was further ordered to acknowledge plaintiff in all public and private conversations about the research.

Thereafter, the original members of plaintiff's graduate advisory committee, professors T. Colin Campbell, Joan Egner and Robert Ascher, wrote a letter to Cornell criticizing its investigation. The letter noted that as the committee charged with supervising plaintiff's dissertation, it was intimately familiar with plaintiff's ideas and research and, therefore, was well aware that Levitsky had stolen plaintiff's ideas and intellectual property. In December 1996, the USDA terminated the grant, finding that no progress had been made in the study and that periodic reports filed by Levitsky lacked detail or specificity and, in fact, evidenced incompetence. Thereafter, a local newspaper apparently printed a story about the failed grant and the accusations that plaintiff and her graduate advisory committee had levied against Levitsky. In response, in March 1998, Levitsky sent an e-mail to various persons and media outlets denying that he stole plaintiff's research protocol and methodology and claiming that the grant project failed because plaintiff and her graduate advisory committee approached the USDA and actively lobbied for its termination.

In March 1998, Elsie Popkin, a member of the President's Council of Cornell Women, an alumni organization that was considering whether it should lend its support to plaintiff, attended a March 28, 1998 meeting where Don Randel, Cornell's Provost, addressed the controversy. According to Popkin, Randel stated that there was no evidence supporting plaintiff's allegations, that plaintiff's research protocol and methodology were not original and that her doctoral degree was suspect as she supposedly failed to properly attribute her work. Based upon this information, the women's group gave up interest in investigating plaintiff's allegations of wrongdoing.

Plaintiff commenced this action on February 8, 1999 seeking to recover damages flowing from the destruction of her reputation in the academic community and the discrediting of her research hypotheses and methodology. Her complaint alleges causes of action against Levitsky, Cornell or both, sounding in misappropriation, fraud, breach of contract, breach of fiduciary duty, negligence, tortious interference with prospective economic advantage, defamation and intentional infliction of emotional distress. Cornell made a preanswer motion to dismiss the complaint primarily on statute of limitations grounds and Levitsky cross-moved for summary judgment dismissing the complaint against him on a number of grounds. Supreme Court denied both motions in all respects and defendants appeal.

Turning first to Levitsky's appeal, we find merit to the claim that Supreme Court erred in refusing to dismiss the cause of action for tortious interference with prospective economic advantage (ninth cause of action) based on the contention that plaintiff was deprived of professional opportunities because of the alleged injury to her professional reputation. In view of the fact that the claimed damage is measured by harm to plaintiff's reputation, the cause of action sounds in defamation (*see, Ramsay v Bassett Hosp.*, 113 AD2d 149, 151-152, *lv dismissed*, 67 NY2d 608; *Kartiganer Assoc. v Town of Newburgh*, 57 AD2d 857), which is already alleged in the tenth cause of action and seeks to recover for the very same injury (*see, Dobies v Brefka*, 273 AD2d 776, 778, *lv dismissed* 95 NY2d 931; *Matter of Entertainment Partners Group v Davis*, 198 AD2d 63, 64).

In addition, we agree with Levitsky that the first (misappropriation), seventh (negligence), ninth (tortious interference with prospective economic advantage), tenth (defamation) and twelfth (intentional infliction of emotional distress) causes of action against him are time barred. The first, seventh and ninth (to the extent that New York recognizes a cause of action for tortious interference with prospective economic advantage [*see, Kronos Inc. v AVX Corp.*, 81 NY2d 90]) causes of action are governed by the three-year statute of limitations of CPLR 214 (4) and (5). The tenth and twelfth causes of action are governed by the one-year statute of limitations of CPLR 215 (3) (*see, Campbell v Chabot*, 189 AD2d 746, 747). There can be no question that substantially all of the acts alleged in support of these causes of action took place during 1994 and 1995.

Disputing none of that, plaintiff contends that the wrongful conduct underlying substantially all of her causes of action against Levitsky, including the ones at issue here, is "[his] tak-

ing credit for [her] work," which continues to the present time. As such, her analysis continues, the statute of limitations will not begin to run until the wrong has become complete (*see, Boland v State of New York*, 30 NY2d 337, 341), which will not occur until Levitsky "recant[s] his words or deeds" or "correct[s] the record." We disagree. In our view, the complaint fails to set forth a continuing course of conduct with sufficient particularity to establish the existence of a continuing tort (*cf., Neufeld v Neufeld*, 910 F Supp 977, 982-983).

Unlike the situation in *Boland v State of New York* (*supra* [claim for wrongful commitment to mental institution]) or *Thomas v City of New York* (814 F Supp 1139 [civil rights action arising out of foster care placement]), the present complaint provides no means of defining the duration of the claimed wrongful conduct. In fact, accepting plaintiff's premise is to presuppose that, absent a retraction or apology, the claimed harm would continue ad infinitum, regardless of whether Levitsky engaged in any future conduct with regard to plaintiff. Although it may be that the damage to plaintiff's reputation and earnings capacity will continue into the future—past tortious conduct often results in future damages— she has failed to come forward with evidence sufficient to make out any ongoing course of conduct. Notably, given the strict pleading requirements relative to defamation causes of action (*see*, CPLR 3016 [a]), plaintiff's present citation to a March 1, 1998 e-mail, which is not referred to in either the complaint or plaintiff's responses to interrogatories, is unavailing.

We also agree with Levitsky's contention that plaintiff has failed to come forward with any factual allegations or evidence to support her claim of a fiduciary relationship, which forms the basis for the sixth cause of action, or of any contract with Levitsky other than the September 1995 contract negotiated by the ombudsman. We therefore conclude that Supreme Court should have granted summary judgment dismissing the third (breach of contract) and sixth (breach of fiduciary duty) causes of action. The second (fraud) and fourth (breach of ombudsman contract) causes of action survive.

Now turning to Cornell's appeal, we conclude that Supreme Court erred in its resolution of Cornell's motion with regard to all but one of the causes of action asserted against Cornell.[2] First, the causes of action alleging breach of contract (fifth

---

2. After Cornell perfected its appeal, plaintiff conceded in her responding brief that her claims for breach of fiduciary duty (sixth cause of action), tortious interference with prospective economic advantage (ninth cause of action) and intentional infliction of emotional distress (thirteenth cause of ac-

cause of action) and negligence (eighth cause of action) should have been dismissed as untimely. Although couched in terms of "contract" and "tort" to avoid the applicable statutes of limitation, the claims are directed at Cornell's academic and administrative decision to reject plaintiff's administrative charges against Levitsky, which may be reviewed only in a CPLR article 78 proceeding (see, Maas v Cornell Univ., 94 NY2d 87; Diehl v St. John Fisher Coll., 278 AD2d 816, lv denied 96 NY2d 707; Risley v Rubin, 272 AD2d 198, lv denied 96 NY2d 701; Holm v Ithaca Coll., 256 AD2d 986, 988, lv denied 93 NY2d 804; Gertler v Goodgold, 107 AD2d 481, 487, affd 66 NY2d 946). Inasmuch as plaintiff failed to challenge the determination within four months (see, CPLR 217), the causes of action are time barred (see, Diehl v St. John Fisher Coll., supra; Gertler v Goodgold, supra at 487) and should have been dismissed.

Plaintiff's claim for intentional infliction of emotional distress (fourteenth cause of action) is premised upon an assertion that she has suffered severe emotional distress as a result of Randel's allegedly defamatory statements. Significantly, a cause of action alleging intentional infliction of emotional distress should be dismissed "where the conduct complained of falls well within the ambit of other traditional tort liability" (Fischer v Maloney, 43 NY2d 553, 558). Here, the conduct alleged in the subject cause of action falls squarely within the scope of plaintiff's defamation claim and, therefore, should have been dismissed (see, Dec v Auburn Enlarged School Dist., 249 AD2d 907, 908; Butler v Delaware Otsego Corp., 203 AD2d 783, 784-785; Sweeney v Prisoners' Legal Servs. of N.Y., 146 AD2d 1, 7, lv dismissed 74 NY2d 842; Rozanski v Fitch, 113 AD2d 1010). Additionally, the facts alleged in the complaint, even if true, are insufficient to state a cause of action for intentional infliction of emotional distress, which requires "extreme and outrageous conduct [so transcending] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society" (Freihofer v Hearst Corp., 65 NY2d 135, 143).

Cornell is also correct in its assertion that it cannot be held vicariously liable for Levitsky's actions because none of the complained of conduct was committed by Levitsky within the scope of his employment with Cornell (see, Riviello v Waldron,

tion) should be dismissed against Cornell. Those causes of action will not be addressed.

47 NY2d 297, 302).[3] It is fundamental that there is no vicarious liability for acts "committed by an employee solely for personal motives unrelated to the furtherance of the employer's business" (*Manno v Mione*, 249 AD2d 372, 372; *see, Seymour v New York State Elec. & Gas Corp.*, 215 AD2d 971, 973; *Kirkman v Astoria Gen. Hosp.*, 204 AD2d 401, 402, *lv denied* 84 NY2d 811). Here, the actions alleged to have been taken by Levitsky were for his own personal gain, i.e., to achieve fame and recognition as the originator of the research protocol and methodology, thereby advancing his own reputation in the academic community, and were unrelated to the furtherance of Cornell's business (*see, Manno v Mione, supra; Seymour v New York State Elec. & Gas Corp., supra* at 973; *Kirkman v Astoria Gen. Hosp., supra; Nicollette T. v Hospital for Joint Diseases/ Orthopaedic Inst.*, 198 AD2d 54; *Island Associated Coop. v Hartmann*, 118 AD2d 830, 831).

As a final matter, we conclude that Supreme Court did not err in denying Cornell's motion to dismiss the defamation (eleventh) cause of action arising out of Randel's statements at his March 1998 address to the President's Council of Cornell Women, based on Cornell's assertion of the "common interest" privilege. Surely, "[a] qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest" (*Grier v Johnson*, 232 AD2d 846, 847; *see, Liberman v Gelstein*, 80 NY2d 429, 437; *Hoyt v Kaplan*, 263 AD2d 918, 919). Because the "common interest" privilege constitutes an affirmative defense (*see, Shapiro v Health Ins. Plan of Greater N.Y.*, 7 NY2d 56, 59; *Norwood v City of New York*, 203 AD2d 147, 148, *lv dismissed* 84 NY2d 849), however, it does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211 (a) (*but see, Doherty v New York Tel. Co.*, 202 AD2d 627).

To the contrary, the recognized procedure is to plead the privilege as an affirmative defense and thereafter move for summary judgment on that defense, supporting the motion with competent evidence establishing prima facie that the allegedly defamatory communications were " 'made by one person to another upon a subject in which both have an interest' " (*Liberman v Gelstein, supra* at 437, quoting *Stillman v Ford*, 22 NY2d 48, 53). Upon such a showing, the burden then shifts

---

**3.** Of the causes of action for which plaintiff seeks to hold Cornell vicariously liable (first through fourth, sixth, seventh, ninth, tenth and twelfth causes of action), only the second and fourth remain for our consideration.

to the plaintiff to demonstrate that the defendant spoke with malice, either under the common-law or constitutional standard (*see, Liberman v Gelstein, supra* at 437-438). In this case, Cornell attempted to short-circuit that procedure by taking the position that the allegations of the complaint established the qualified privilege as a matter of law, thus improperly placing the burden on plaintiff to make competent allegations of malice in anticipation of the affirmative defense. In our view, the motion was premature and was subject to denial on that basis without prejudice, of course, to a motion for summary judgment following joinder of issue, should Cornell be so advised.

Defendants' remaining contentions have been considered and have been either rendered academic or found to be unavailing.

Cardona, P.J., Crew III, Spain and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant Cornell University's motion to dismiss the fifth, sixth, eighth, ninth, thirteenth and fourteenth causes of action and the claims of derivative liability under the first through fourth, sixth, seventh, ninth, tenth and twelfth causes of action against it and as denied defendant David Levitsky's cross motion for summary judgment dismissing the first, third, sixth, seventh, ninth, tenth and twelfth causes of action against him; said motions granted to said extent; and, as so modified, affirmed.