**PENNECOM B.V., Plaintiff–Appellant,**

**v.**

**MERRILL LYNCH & CO., INC., Merrill Lynch International, Inc. and Paul A. Pittman, Defendants–Appellees.**

**Docket No. 03–7774.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 5, 2004.

Decided: June 28, 2004.

---

Henry J. Fieldman, Fieldman Hay & Ullman, LLP, New York, NY (Anthony B. Ullman, on the brief), for Appellant.

E. Michael Bradley, Jones Day, New York, NY (Mark S. Mandel and Traci L. Lovitt, on the brief), for Appellees.

Before: LEVAL, SOTOMAYOR, and WESLEY, Circuit Judges.

LEVAL, Circuit Judge.

Plaintiff-appellant PenneCom B.V. ("PenneCom") appeals from a judgment of the United States District Court for the Southern District of New York (Chin, J.) granting the motion of defendants-appellees Merrill Lynch & Co., Inc., Merrill Lynch International, Inc., and Paul A. Pittman (collectively, "Merrill Lynch") to dismiss by reason of collateral estoppel. Merrill Lynch had advised Elektrim S.A. ("Elektrim"), a Polish company, when Elektrim contracted to purchase from PenneCom the shares of Pilicka Telefonia S.A. ("Pilicka"). When Elektrim refused to go through with the purchase, PenneCom initiated arbitration proceedings against Elektrim in London (as provided by the Share Purchase Agreement ("SPA") between PenneCom and Elektrim), seeking damages of $100 million. The arbitration panel found Elektrim liable for breach of contract and awarded PenneCom approximately $38 million in damages and costs, which PenneCom collected.

PenneCom then brought this suit against Merrill Lynch, seeking damages in excess of the $38 million awarded by the arbitration panel against Elektrim. PenneCom contends that Merrill Lynch actively assisted Elektrim's breach and in the presentation of fraudulent evidence to the arbitration panel, which minimized the loss award. Merrill Lynch moved to dismiss, claiming collateral estoppel. The court granted the motion and dismissed the suit.

We believe the dismissal was premature. If PenneCom can prove its allegations against Merrill Lynch, collateral estoppel

may be inapplicable. We therefore vacate the judgment of the district court and remand for discovery and further proceedings.

## BACKGROUND

On April 8, 1999, PenneCom entered into the Share Purchase Agreement with Elektrim, under which Elektrim agreed to purchase, for approximately $140 million, the shares of PenneCom's subsidiary Pilicka, a Polish telephone company. Merrill Lynch acted as Elektrim's investment banker for this transaction.

According to PenneCom's allegations, which must be accepted as true for this appeal because the suit was dismissed without PenneCom being given an opportunity to prove them, Elektrim was conducting negotiations with Deutsche Telekom for a joint venture in Polish telecommunications, which provided substantial motivation for Elektrim's purchase of Pilicka. After Elektrim entered into the SPA with PenneCom, however, its negotiations with Deutsche Telekom broke down, making the Pilicka acquisition substantially less attractive to Elektrim. Prior to closing on Elektrim's purchase of the Pilicka shares, representatives of Elektrim met with Merrill Lynch. Elektrim told Pittman, an attorney and investment banker employed by Merrill Lynch, that it did not wish to go through with the deal.

In the course of the final pre-acquisition due diligence, Merrill Lynch and Elektrim allegedly devised false pretextual justifications for Elektrim's refusal to close. Elektrim did not attend the scheduled closing or complete the transaction.

In accordance with the SPA, PenneCom commenced arbitration proceedings against Elektrim in London before the International Chamber of Commerce ("ICC"), seeking (i) specific performance or, in the alternative, $100 million in damages, plus (ii) punitive damages. PenneCom contends that Pittman and Merrill Lynch presented fraudulent evidence on Elektrim's behalf during the arbitration. The arbitration panel found Elektrim liable for breach of contract under New York law and awarded approximately $38 million in fees and compensatory damages. The arbitration panel declined to award any further relief. PenneCom obtained judicial recognition of the award in an attachment proceeding in Poland and collected the full amount of the award.

Later, after acquiring some information about Merrill Lynch's role in Elektrim's breach and in the arbitration, PenneCom brought this suit against Merrill Lynch, alleging that Merrill Lynch actively assisted Elektrim's breach, and seeking damages of approximately $100 million. In its papers submitted to the district court, PenneCom contended that Merrill Lynch, in its evidence presented to the arbitration panel, falsely minimized the loss caused to PenneCom by Elektrim's breach.

Merrill Lynch moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) on the ground that PenneCom had "recovered the full amount to which it was entitled" in the arbitration proceedings and was barred from claiming any further entitlements by principles of collateral estoppel. Without allowing PenneCom to take discovery, the district court granted the motion, believing that our ruling in *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir.1986), compelled dismissal. *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, No. 02 CIV 5355, 2003 WL 21512216, at *5–6, 2003 U.S. Dist. LEXIS 11229, at *14–17 (S.D.N.Y. July 1, 2003). The district court denied PenneCom's subsequent motion "to alter or amend the judgment" of dismissal, assertedly brought pursuant to Rule 59(e) of the Federal

Rules of Civil Procedure, as untimely and meritless.

PenneCom appeals from these judgments.

## DISCUSSION

■ While the parties disagree on many questions, they are in agreement that New York's law of collateral estoppel governs. The New York law of collateral estoppel employs a two-part test: a party is estopped from relitigating an issue when that issue was necessary to the resolution of the prior action, and the party against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation. *Schwartz v. Pub. Adm'r*, 246 N.E.2d 725, 729, 24 N.Y.2d 65, 70, 298 N.Y.S.2d 955, 960 (1969). *See also Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490–91, 62 N.Y.2d 494, 500–01, 478 N.Y.S.2d 823, 826–27 (1984); *Gilberg v. Barbieri*, 423 N.E.2d 807, 809, · 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 51 (1981).

In ruling that PenneCom is barred from pursuing its case against Merrill Lynch by the doctrine of collateral estoppel, the district court relied on our ruling in *Norris v. Grosvenor*. We believe there are significant differences between this case and *Norris*, which, at least at this stage, make the dismissal of PenneCom's case inappropriate.

In *Norris*, the facts, as recited by the Court of Appeals, were as follows: The plaintiff Norris had a contract with Cooper to receive a 25% share of Cooper's revenues from Cooper's United States distributorship of Twinings Tea. *Norris*, 803 F.2d at 1283. Cooper, without Norris's agreement, arranged with Twining to accept early termination of the distributorship in exchange for, *inter alia*, a payment of $3 million. Cooper did not pay Norris a share of the $3 million. Norris brought an arbitration proceeding against Cooper, alleging breach of contract and claiming his 25% share of three different categories of Cooper's revenues: (a) Cooper's 1979 profits (to the extent not previously paid to Norris); (b) the $3 million early-termination payment Cooper had received from Twining; and (c) the future revenues Cooper would have earned during Norris's lifetime had Cooper not agreed to the early termination. *Id.* at 1284. The arbitrator awarded Norris his 25% share of Cooper's 1979 revenues and the $3 million early termination payment. *Id.* The arbitrator, however, denied Norris any recovery for Norris's claimed life interest in the hypothetical future earnings of Cooper's distributorship. After judicial confirmation of the award, Cooper paid it in full.

Norris then sued Twining in federal court, seeking to establish Twining's complicity in Cooper's failure to pay Norris a share of the hypothetical future earnings of the distributorship—the claim the arbitrator had denied. The complaint asserted three theories: Twining's knowing participation in Cooper's breach of fiduciary duty toward Norris in failing to make this payment, Twining's tortious interference with Cooper's performance of this contractual obligation, and Twining's wrongful conversion of Norris's right to a share of Cooper's future profits. *Id.* Norris sought both compensatory and punitive damages. *Id.* at 1285.

Each of the three theories asserted against Twining was premised on the proposition that Norris had a right to participate in Cooper's hypothetical future profits. If Cooper had no obligation to make any payments to Norris on account of the hypothetical future profits foregone by Cooper, then Twining could not be liable for having participated in Cooper's breach of that obligation. Because the arbitrator had denied Norris's claim that Cooper owed a further share attributable to future profits, the district court dismissed Nor-

ris's suit on grounds of collateral estoppel, and we affirmed. We explained, "All of [Norris's] claims [against Twining] raise but a single issue: [Norris's] right ... to participate in the continued profits of [Cooper's] distributorship. That issue has already been decided at the Norris–Cooper arbitration proceeding. ... [T]he arbitrator heard Norris'[s] 'life interest' claim and rejected it." *Id.*

In the present case, the district court concluded that *Norris* precluded Penne-Com's maintenance of this action against Merrill Lynch. The court reasoned:

> Here, PenneCom seeks the same relief—$100 million in damages—that it sought in the arbitration proceedings. The arbitration panel decided the claim and awarded PenneCom only some $38 million in damages, interest, and fees. That amount has been paid by Elektrim. The panel necessarily rejected the claim that PenneCom had been injured to any extent beyond $38 million. PenneCom cannot be permitted now to relitigate that claim by pursuing claims against defendants.
>
> Just as in *Norris*, the prior proceeding was an arbitration between the parties to a contract. Just like the plaintiff in *Norris*, PenneCom achieved a partial victory—proving a breach but winning only some of the damages claimed. Just like the plaintiff in *Norris*, PenneCom has brought a tortious interference with contract claim against a third party that was not a party to the contract, seeking damages that it sought but did not obtain in the arbitration.

*PenneCom B.V.*, 2003 WL 21512216, at *6, 2003 U.S. Dist. LEXIS 11229, at *15.

We believe it was error, at least at this stage of the proceedings, for the district court to conclude that *Norris* calls for dismissal on grounds of collateral estoppel. This case is potentially different from *Norris* in several significant respects.

■ 1. *PenneCom's claim for additional compensatory damages.* The arbitrators' finding that PenneCom's loss did not exceed $38 million may properly be found to preclude PenneCom from asserting against Merrill Lynch that its losses exceeded $38 million—if Merrill Lynch can establish all the requirements of collateral estoppel. With regard to the first part of New York's test for collateral estoppel—whether the issue in question was necessary to the resolution of the prior action—this case resembles *Norris*. In each case, the arbitrators made a smaller award of compensatory damages than the plaintiff contended was due. In each case, the plaintiff then brought suit against a third party claimed to have been complicit in the original defendant's breach of contract, reasserting the larger claim of loss. And, in each case, the district court found that the plaintiff was precluded by the prior arbitral award from relitigating the extent of its damages.

There are, however, two potential differences between this case and *Norris* that could undermine Merrill Lynch's ability to show entitlement to collateral estoppel—one relating to the second element of collateral estoppel, the other relating to general equitable standards for the invocation of the doctrine. First, as noted above, under New York law collateral estoppel bars subsequent litigation only when the party seeking relitigation had a "full and fair opportunity" to litigate the question in the earlier proceeding. In *Norris*, we rejected Norris's contention that he had been deprived of a full and fair opportunity to be heard in the arbitration. We reasoned that the arbitrator's exclusion of evidence about Twining's post-termination distribution activities did not deprive Norris of a fair opportunity to litigate his claim because that evidence was irrelevant to determining Norris's underlying right to share in distributorship profits after the

end of Cooper's distributorship. *Norris,* 803 F.2d at 1286. In this case, in contrast, PenneCom's allegations go to the very heart of whether its damages claims were fully and fairly adjudicated in the earlier proceeding.

■ Second, collateral estoppel is an equitable doctrine—not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case. *See Blonder–Tongue Labs., Inc. v. Univ. of Illinois Found.,* 402 U.S. 313, 334, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("In the end, decision [on an issue of collateral estoppel] will necessarily rest on the trial courts' sense of justice and equity."); *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993) (doctrine is "premised on notions of due process and fairness"); *Nations v. Sun Oil Co. (Del.),* 705 F.2d 742, 744 (5th Cir.1983) ("Collateral estoppel is an equitable doctrine.").

■ New York courts have long applied the maxim that one "who comes to equity must come with clean hands." *Amarant v. D'Antonio,* 197 A.D.2d 432, 434, 602 N.Y.S.2d 837, 838 (N.Y.App.Div.1993). *Cf. Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 241, 244–45, 54 S.Ct. 146, 78 L.Ed. 293 (1933). Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is "directly related to the subject matter in litigation" and has injured the party attempting to invoke the doctrine. *Weiss v. Mayflower Doughnut Corp.,* 135 N.E.2d 208, 210, 1 N.Y.2d 310, 316, 152 N.Y.S.2d 471, 474 (1956). The Supreme Court, explaining the rationale behind the doctrine of unclean hands, has stated that "[t]he equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniq-uity." *Bein v. Heath,* 47 U.S. 228, 247, 6 How. 228, 12 L.Ed. 416 (1848). *See also Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.,* 792 F.Supp. 969, 970–72 (S.D.N.Y.) (holding that the unclean hands doctrine would defeat the affirmative defense of laches where a defendant had, in a prior proceeding, given false testimony directly related to the circumstances giving rise to the laches defense), *aff'd,* 983 F.2d 1048 (2d Cir.1992).

The plaintiff in *Norris* made no allegation that Twining had engaged in inequitable conduct that should deny it entitlement to claim the benefits of collateral estoppel. PenneCom, in contrast, asserts that the Merrill Lynch defendants devised a fraudulent scheme to dupe the arbitrators both as to Elektrim's justification for abandoning its contractual commitment and as to the extent of loss incurred by PenneCom from Elektrim's breach. PenneCom thus claims that Merrill Lynch's allegedly unclean hands should bar Merrill Lynch from asserting collateral estoppel.

We believe that before the court invokes collateral estoppel to bar PenneCom from relitigating the extent of its loss resulting from Elektrim's breach, PenneCom must be allowed discovery to collect evidence which might support a finding either that PenneCom was not afforded a full and fair opportunity to prove its loss in the arbitration, or that Merrill Lynch should be precluded by its own (alleged) misconduct from asserting the equitable doctrine of collateral estoppel. We accordingly vacate the judgment and remand to permit such discovery.

2. *PenneCom's claim for punitive damages against Merrill Lynch.* Although the Amended Complaint did not expressly demand punitive damages, it alleged facts designed to support an award of such damages, and on remand Penne-

Com may seek leave from the district court to amend its complaint.

■ In the event a claim for punitive damages becomes part of the case, in our view the question of Merrill Lynch's entitlement to collateral estoppel on that claim would present different considerations from those arising on the claim for compensatory damages. Even if the district court determines after discovery that collateral estoppel bars PenneCom from relitigating the amount of its loss against Merrill Lynch, such a determination should not necessarily preclude punitive damages against Merrill Lynch because Penne-Com's claim for *punitive* damages would not require relitigating any issue previously decided in the arbitration. Nor would it require litigation of an issue that Penne-Com might have asserted in the arbitration.

We recognize that in *Norris*, the court relied on collateral estoppel to dismiss claims for both compensatory and punitive damages against Twining, but the facts of *Norris* in this respect were significantly different. In *Norris*, the plaintiff's claim for punitive damages against Twining depended on Twining's participation in wrongfully denying Norris his entitlement to a share of Cooper's hypothetical future earnings. *Norris*, 803 F.2d at 1285. Because the arbitrator determined that Norris had no such entitlement, Twining could not be liable for either compensatory or punitive damages on account of Cooper's justified refusal to make such payment to Norris. Thus, the arbitration judgment collaterally estopped Norris from pursuing punitive damages against Twining because Norris had *lost* the arbitration on the question of liability, which was a necessary prerequisite to the proof of his claim for punitive damages.

Here, in contrast, PenneCom intends to seek punitive damages against Merrill Lynch on account of a liability that the prior arbitration determined *in Penne-Com's favor*. The arbitration between PenneCom and Elektrim resulted in an award of damages to PenneCom based on the conclusion that Elektrim had breached its contract with PenneCom. PenneCom now is suing Merrill Lynch for both compensatory and punitive damages on the theory that Merrill Lynch participated in Elektrim's breach.

To the extent PenneCom seeks additional compensatory damages resulting from that breach, it seeks to relitigate a matter already determined in the arbitration. As noted above, such relitigation may be barred if Merrill Lynch can establish all the elements of collateral estoppel and is not precluded by its own conduct from asserting the doctrine.

In contrast, to the extent PenneCom seeks punitive damages against Merrill Lynch, it is not seeking to evade or relitigate any matter previously decided by the arbitrators. As Merrill Lynch was not joined in the arbitration (and could not have been joined without its consent), that proceeding did not consider the question whether Merrill Lynch was complicit in Elektrim's breach of contract, or whether Merrill Lynch was liable for punitive damages on account of that complicity. Because the arbitrators decided that Elektrim *was* liable to PenneCom for breach of contract, the arbitration award was in no way inconsistent with assessing punitive damages against Merrill Lynch based on Merrill Lynch's complicity in Elektrim's breach. PenneCom's claim for punitive damages is thus unlike *Norris* in that the issue upon which Merrill Lynch's liability depends has *not* "already been decided at the . . . arbitration proceeding." *Norris*, 803 F.2d at 1285.

It therefore appears to us that, even if the court determines that PenneCom is barred by collateral estoppel from claiming

a larger compensatory award against Merrill Lynch, a claim of punitive damages would not necessarily be precluded.[1]  As this issue was neither raised in the district court, nor argued in the briefs before us, we do not consider the foregoing discussion of punitive damages to be part of our holding.  It is not binding on the district court, but is included for the court's consideration if these issues are argued before it.

## CONCLUSION

The judgments of the district court are VACATED and the case is REMANDED for further proceedings.

---

1.  We recognize that in the arbitration proceedings, the panel denied PenneCom's claim for punitive damages against Elektrim.  Merrill Lynch may contend that the arbitration panel's rationale should similarly bar Penne-Com from claiming punitive damages against Merrill Lynch.  We express no views on that question, leaving it to be considered in the first instance by the district court, if raised.