■ IDT CORPORATION, Respondent, v MORGAN STANLEY DEAN WITTER & Co. et al., Appellants. [846 NYS2d 116]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered April 27, 2006, which, to the extent appealed from, denied defendants' motion to dismiss the first, second, fourth and fifth causes of action in the complaint for failure to state a cause of action, affirmed, without costs.

Plaintiff, a telecommunications company, alleges in its complaint that Morgan Stanley, its former investment banker, engaged in a variety of improper conduct in an effort to maximize the fees it collected, thereby breaching its fiduciary duty to plaintiff and causing it substantial financial harm in the process. The complaint asserts claims for breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business relations, misappropriation of confidential and proprietary business information, and unjust enrichment. Morgan Stanley's motion was granted only to the extent of dismissing the third cause of action for tortious interference with prospective business relations.

Morgan Stanley contends that all of the remaining claims are barred by collateral estoppel, which prevents a party from relitigating an issue previously decided against it in a proceeding where there was a fair opportunity to fully litigate the matter (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]), pointing to plaintiff's prior arbitration against Telefonica International, S.A. where, according to Morgan Stanley, the arbitrators decided critical issues that preclude plaintiff's present claims. In that arbitration, however, plaintiff never had an opportunity to conduct discovery on the extent of the damages it suffered due to Morgan Stanley's alleged tortious conduct (*see PenneCom B.V. v Merrill Lynch & Co., Inc.*, 372 F3d 488, 492-493 [2d Cir 2004]). Nor are plaintiff's remaining claims time-barred or insufficient to state causes of action. While Telefonica's breach of its memorandum of understanding with IDT was allegedly a result of Morgan Stanley's tortious interference, no cause of action for such interference arose until plaintiff actu-

ally suffered damages, and such damages were not necessarily suffered at the time the contract was breached (see *Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 96-97 [1993]). The equitable breach of fiduciary duty claim seeking disgorgement of $10 million is governed by a six-year limitations period (CPLR 213 [1]; *Kaufman v Cohen*, 307 AD2d 113, 118 [2003]), and should not be dismissed at this stage of the litigation as "duplicative" of the unjust enrichment claim, when it properly serves as an alternative theory for the relief sought. Finally, the rule that an award for punitive damages must be limited to conduct directed at the general public applies in breach of contract cases, not tort cases for breach of fiduciary duty (see *Sherry Assoc. v Sherry-Netherland, Inc.*, 273 AD2d 14, 15 [2000]).

We have considered defendant's remaining arguments and find them unpersuasive. Concur—Andrias, J.P., Saxe, Nardelli and Sweeny, JJ.

McGuire, J., dissents in a memorandum as follows: The principal issues on appeal in this action brought by plaintiff-respondent IDT Corporation against defendants-appellants Morgan Stanley Dean Witter & Co. and Morgan Stanley & Co., Incorporated (collectively, Morgan Stanley) center on the extent to which IDT's claims against Morgan Stanley are barred by either the doctrine of collateral estoppel on account of an earlier arbitration proceeding IDT brought against nonparty Telefonica International, S.A. or the statute of limitations.

In May 2001, IDT commenced an arbitration proceeding against Telefonica alleging that IDT had sustained over $2 billion in damages as a result of Telefonica's delays in performance and breaches of a memorandum of understanding (the MOU) that IDT and Telefonica entered into in August 1997 relating to a South American submarine cable network (the SAm-1 Network) that Telefonica expected to build. The MOU had three distinct components: (1) a capacity component, pursuant to which IDT had the right to purchase at least $100 million of capacity in the SAm-1 Network over a five-year period, with an option to purchase additional capacity, under certain favorable pricing conditions; (2) an equity purchase component, pursuant to which IDT had the right to purchase up to 10% of the equity in a company, "NewCo," that Telefonica would establish to "construct, establish, operate and maintain the [SAm-1] System and, directly or indirectly sell capacity on the System"; and (3) a joint venture component, pursuant to which Telefonica and IDT agreed to establish a joint venture company to develop and market certain products.

IDT alleges that Morgan Stanley, acting as Telefonica's invest-

ment banker in connection with the SAm-1 transaction, wrongly induced Telefonica to propose to IDT that it accept a 5% interest in an entity to be called Emergia, instead of a 10% interest in NewCo. In essence, IDT claims that Emergia was the entity contemplated by the MOU and that NewCo was denominated Emergia in an effort to persuade IDT to accept a smaller interest than the one to which it was entitled under the MOU. Thus, the complaint alleges that in July 2000, Morgan Stanley assured IDT that the value of a 5% interest in Emergia was far greater than the value of a 10% interest in NewCo.

Collateral estoppel prevents a party from "relitigat[ing] an issue that was previously decided against it" (*Singleton Mgt. v Compere*, 243 AD2d 213, 215 [1998]), and it "appl[ies] as well to awards in arbitration as [it does] to adjudications in judicial proceedings" (*Matter of American Ins. Co. [Messinger—Aetna Cas. & Sur. Co.]*, 43 NY2d 184, 189-190 [1977]). As is clear from the 72-page decision issued by the arbitration panel, the panel found that: Telefonica did not breach the joint venture component of the MOU; Telefonica breached the equity purchase component of the MOU but IDT did not sustain any damages as a result of that breach; Telefonica breached the capacity purchase component of the MOU and IDT thereby sustained $16.9 million in damages; the breaches of the equity and capacity components occurred no earlier than October 2000; and IDT was agreeable to and benefitted from any prebreach delay in the parties' performance under the MOU.

With the exception of its claim for unjust enrichment and punitive damages, all of IDT's claims against Morgan Stanley seek damages allegedly caused when Morgan Stanley induced Telefonica to delay performance under and breach the MOU. These claims are barred by the arbitration panel's findings that only one breach of the MOU by Telefonica caused IDT any damages and that the amount of those damages was $16.9 million (*Norris v Grosvenor Mktg. Ltd.*, 803 F2d 1281, 1286 [2d Cir 1986] [applying New York law and concluding in action alleging, inter alia, tortious interference with contract that plaintiff was collaterally estopped from relitigating issue decided against him in earlier arbitration proceeding he had commenced against a different party for breach of contract]; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 197-198 [1980] [amount of lost profits awarded to plaintiff in arbitration against contracting party for breach of contract is conclusive on plaintiff

in subsequent action for tortious interference with contract seeking such profits]).[1]

IDT does not dispute that these adverse findings were made by the arbitration panel. Rather, its argument that collateral estoppel does not bar these claims is premised on the principle that the party to be precluded from relitigating an issue must have had a full and fair opportunity in the prior action or proceeding to contest the issue that was decided against it (*see Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276 [1988], *cert denied* 488 US 1005 [1989]), and the flexibility in the application of the doctrine that inheres in its equitable nature (*see Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]). In particular, IDT relies on the Second Circuit's decision in *PenneCom B.V. v Merrill Lynch & Co., Inc.* (372 F3d 488 [2d Cir 2004]).

In *PenneCom*, the plaintiff, PenneCom, brought an action against Merrill Lynch alleging that it had caused PenneCom $100 million in damages by tortiously interfering with a contract between PenneCom and Elektrim S.A., pursuant to which Elektrim agreed to purchase from PenneCom the shares of its subsidiary. In an earlier arbitration proceeding against Elektrim, PenneCom was awarded $38 million in fees and damages for Elektrim's breach of the contract. Merrill Lynch moved to dismiss the tortious interference claim, contending that it was barred by collateral estoppel because the arbitration award had determined that PenneCom's damages on account of the breach did not exceed $38 million (*id.* at 491-492).

The District Court granted Merrill Lynch's motion but the Second Circuit reversed. The linchpin in the court's decision was an allegation by PenneCom that went "to the very heart of whether its damages claims were fully and fairly adjudicated in the [arbitration] proceeding" (*id.* at 493); namely, that Merrill Lynch "presented fraudulent evidence on Elektrim's behalf during the arbitration" (*id.* at 490), and that this fraudulent evidence had "minimized the loss award" (*id.* at 489). The court, stressing that under the governing New York law collateral estoppel is an equitable doctrine and that "one 'who comes to equity must come with clean hands' " (*id.* at 493, quoting *Amarant v D'Antonio*, 197 AD2d 432, 434 [1993]), concluded that PenneCom should be permitted to conduct discovery bearing on its contention that Merrill Lynch had "devised a fraudulent scheme to dupe the arbitrators . . . as to the extent of loss incurred . . . from Elektrim's breach" (*id.*).

---

1. Of course, as noted in *Guard-Life*, as compared to the damages that can be awarded for breach of contract, the damages that can be awarded for tortious interference with a contract are broader in scope (50 NY2d at 197 n 6).

According to IDT, *PenneCom* is "directly on point" because it alleges that "deceptions by Morgan Stanley were perpetrated on both IDT and the Arbitration Panel, and served to minimize falsely the loss caused to IDT by Telefonica's breach." Similarly, it alleges that "Morgan Stanley devised a fraudulent scheme to dupe both IDT and the Arbitration Panel as to the 'distinction' between NewCo and Emergia and the valuation of these companies." In support of these allegations, IDT does not point to any testimony at the arbitration hearing from anyone affiliated with Morgan Stanley. Rather, it relies on "slanted" projected valuations that Morgan Stanley had presented to it in July 2000, long before the arbitration proceeding was commenced, that it had subpoenaed from Morgan Stanley during discovery prior to the arbitration, and that thereafter were "submitted" (IDT does not state by whom) to the arbitration panel. IDT claims that these projected valuations misled the panel by suggesting a "false distinction" between NewCo and Emergia and misrepresenting the relative projected valuations of the two entities, including by assigning a far greater value to a 5% interest in Emergia than a 10% interest in NewCo.[2] As in *PenneCom*, IDT maintains, the bar of collateral estoppel should not apply and it should be entitled to take discovery relating to these allegations.

*PenneCom* is irrelevant because IDT's claim that the arbitration panel was deceived is conclusively refuted by the panel's comprehensive 72-page decision. As for the supposed "false distinction" between NewCo and Emergia, the panel concluded that the two entities were distinct, vindicating Telefonica's position on what is in essence a question of law relating to the proper interpretation of the MOU. More critically, the panel expressly identified and discussed the four bases for this conclusion, none of which have anything to do with the allegedly deceptive valuations of NewCo and Emergia: (1) the text of the MOU; (2) the minutes of a July 2000 IDT board meeting indicating that IDT itself recognized that its right to invest in NewCo was not the same as a right to invest in Emergia; (3) the predispute conduct of IDT and Telefonica; and (4) the equity ar-

---

**2.** IDT asserts as well that Morgan Stanley "willingly" produced the projected valuations in response to its subpoena and did so "knowing that these documents would be relied on by the arbitrators." Although IDT claims that the projected valuations "infected the arbitration panel's decision," it cannot claim that it was deceived by them. Indeed, as its complaint alleges, on the strength of these same projected valuations Morgan Stanley assured it in July 2000 that a 5% interest in Emergia was far superior to the 10% interest in NewCo that was IDT's right under the MOU. IDT, however, rejected the proposal that it accept the smaller interest in Emergia.

rangements between Telefonica and an unrelated entity, Tyco, which converted its right to a 15% interest in NewCo to a 6% interest in Emergia.

Nor does anything in the opinion even suggest that the panel credited the projection that NewCo's value would be approximately 13% to 15% of Emergia's projected value. To the contrary, in determining IDT's damages for Telefonica's breach of the equity purchase component of the MOU, the panel assessed NewCo's value at 45% of Emergia's value. Moreover, as would be expected of sophisticated arbitrators, the panel recognized that Morgan Stanley's July 2000 projected valuation was, if not tendentious, the product of a negotiation in which Morgan Stanley was acting for Telefonica. Thus, after noting that the July 2000 projection of NewCo's value was a small fraction of the value projected for Emergia, the panel stressed that those projections were "prepared by Telefonica and Morgan Stanley to be presented to IDT as part of the process of negotiating IDT's ownership percentage in Emergia."

In short, the panel's decision refutes IDT's claim that the arbitration award was affected to its detriment by the ostensibly "slanted" projections. To avoid the collateral estoppel consequences of the panel's findings, the burden is on IDT to show that the award was so affected (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456 [1985]), but IDT offers only speculation and wholly conclusory assertions.

Related contentions by IDT also are meritless. Thus, IDT's protest that the arbitration panel "did not . . . consider whether Morgan Stanley had acted tortiously in providing [the July 2000 projections] to IDT and urging IDT to rely upon it" is correct but beside the point. Contrary to the unstated premise of this protest, the economic damages IDT sustained as a result of Telefonica's breaches of the MOU are not affected let alone increased by Morgan Stanley's attempts to induce it, tortiously or otherwise, to rely on the projections. Nor is IDT persuasive in contending that delay damages "were not considered, much less awarded, by the arbitration panel." In fact, IDT did seek such damages, and the panel did not award any because it found that performance delays prior to the date of the breaches of the capacity and equity purchase components of the MOU were agreed to and mutually beneficial to IDT and Telefonica. The panel found, in other words, that the delays did not constitute breaches of the MOU. These findings by the panel are unconnected to any alleged misconduct by Morgan Stanley and, as Morgan Stanley correctly argues, it is precisely these adverse

findings that bar IDT from relitigating the same delay issues against Morgan Stanley.[3]

Accordingly, I would hold that IDT's claims, other than its unjust enrichment and punitive damage claims, are barred by collateral estoppel. Given my view that IDT's reliance on *PenneCom* is misplaced, I need not address Morgan Stanley's contention, which the majority implicitly rejects, that *PenneCom* is in any event inconsistent with New York case law. Suffice it to say that the cases Morgan Stanley cites, such as *Jacobowitz v Herson* (268 NY 130 [1935]), *Altman v Altman* (150 AD2d 304 [1989], *lv denied* 74 NY2d 612 [1989]) and *Parker & Waichman v Napoli* (29 AD3d 396 [2006], *lv dismissed* 7 NY3d 844 [2006]), afford considerable if not decisive support for its argument that under New York law collateral estoppel cannot be avoided by a showing that the judgment or determinations in the prior proceeding were tainted by perjury or other "intrinsic fraud" (*Jacobowitz*, 268 NY at 133).

As for IDT's unjust enrichment claim, it should have been dismissed for independent reasons advanced by Morgan Stanley in its motion to dismiss. The unjust enrichment claim has two facets, one of which seeks to recover $10 million IDT paid to Morgan Stanley in accordance with an engagement letter relating to an unrelated transaction between IDT and AT & T. As Morgan Stanley argues, because the $10 million was paid pursuant to the express terms of the engagement letter, IDT cannot recover the $10 million under an unjust enrichment theory if the letter constitutes a valid and enforceable contract (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]). According to IDT, the engagement letter is not a valid and enforceable contract because IDT was "coerced" and "extorted" by Morgan Stanley into signing the engagement letter and paying the $10 million. However, "an agreement purportedly procured under duress must be promptly repudiated" (*Wujin Nanxiashu Secant Factory v Ti-Well Intl. Corp.*, 14 AD3d 352, 353 [2005]). Indisputably, the alleged extortion occurred no later than October 2000 when, according to IDT's complaint,

---

**3.** IDT makes a passing reference in its brief to another memorandum created by Morgan Stanley in May 2000, stating that the panel "expressly quotes, relies upon, and notes 'accord[ ]' with [this] fraudulent" memorandum. The complaint, however, makes no mention of that memorandum and IDT offers nothing in its brief to support or explain its alleged "fraudulent" character. Moreover, the excerpts from the memorandum quoted in the panel's decision have nothing to do with the fraudulent scheme alleged in the complaint, but instead concern the capacity of the cable used in the SAm-1 Network, possible capacity upgrades and the uncertainties attendant to attempting to derive valuations of hypothetical upgrades.

IDT "paid the exorbitant $10 million fee to Morgan Stanley." Because IDT did not bring this action until November 2004, more than four years later, it must be deemed to have ratified the letter of engagement (*see Matter of Guttenplan*, 222 AD2d 255, 257 [1995] [agreement allegedly procured under duress "deemed to have been ratified" when petitioners "failed to take any action toward repudiation of the agreement for over two years after its execution"], *lv denied* 88 NY2d 812 [1996]).[4]

The other facet of IDT's unjust enrichment claim alleges that Morgan Stanley was unjustly enriched by fees it received from Telefonica and others. The failure to allege that Morgan Stanley's enrichment comes at IDT's expense, however, is fatal to this facet of the unjust enrichment claim (*see Conlon v Teicher*, 8 AD3d 606, 607 [2004]).

As for IDT's claim for punitive damages, Morgan Stanley offers one argument (other than its argument based on the statutes of limitations applicable to the underlying tort claims) for its dismissal: the failure of the complaint to allege that the general public was harmed by Morgan Stanley's alleged misconduct. Such an allegation, however, is not essential to an award of punitive damages in a tort action (*see Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007] ["Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but evince(s) a high degree of moral turpitude and demonstrate(s) such wanton dishonesty as to imply a criminal indifference to civil obligations" (internal quotation marks and citations omitted)]; *Giblin v Murphy*, 73 NY2d 769, 772 [1988] [upholding award of punitive damages for breach of fiduciary duty; argument that "punitive damages award must be overturned because there was no harm aimed at the public generally" rejected on ground that "(p)unitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied"]; *Don Buchwald & Assoc. v Rich*, 281 AD2d 329, 330 [2001] ["The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty"]).[5]

Because Morgan Stanley advances no other argument for dis-

---

4. Neither in its complaint nor in its brief on appeal does IDT contend that it was under continuing duress, so as to suspend its obligation to repudiate (*Matter of Guttenplan*, 222 AD2d at 257).

5. In *Steinhardt Group v Citicorp* (272 AD2d 255 [2000]), we upheld fraud causes of action but affirmed the dismissal of a claim for punitive damages. In doing so, we stated that "this was a private transaction" and the "absence of an allegation of egregious tort directed at the public at large justified the IAS Court's dismissal of the ad damnum for punitive damages" (*id.* at 257). In my

missal of the punitive damages claim,[6] it should be upheld unless the underlying tort claims that remain (IDT's claims for tortious interference with contract, breach of fiduciary duty and misappropriation of confidential and proprietary business information) are barred by the applicable statutes of limitations. I respectfully disagree with Supreme Court and the majority that such claims are not so barred.

First, a claim for tortious interference with contract accrues not when the contract is breached, as does a breach of contract claim, but when an injury is sustained (*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]). When the injury is sustained, "rather than the wrongful act of defendant or discovery of the injury by plaintiff, is the relevant date for marking accrual" (*id.*). Alternatively put, "accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint" (*id.*). Regardless of exactly when, prior to May 25, 2001 (the date IDT commenced the arbitration against Telefonica), IDT sustained injury on account of the breach or breaches of the MOU that Morgan Stanley allegedly tortiously induced, IDT's tortious interference claim certainly accrued by May 25, 2001. After all, IDT alleged in its statement of claim that the MOU was a binding agreement, that it had been breached and that it had sustained injuries as a result.

Because IDT did not commence this action until November 5, 2004, more than three years after it commenced the arbitration against Telefonica, IDT's tortious interference claim is time-barred (*see* CPLR 214 [4]). The IAS court ruled otherwise, reasoning that "IDT could not have pled this cause of action until after the Arbitration Panel had determined that the MOU was a valid and binding agreement." The IAS court cited no authority supporting this conclusion, and IDT cites none on this appeal.

Presumably, the IAS court was not of the view that the validity of a contract always must be established in a legal proceeding before a claim of tortious interference with the contract can accrue. Under such a view, after all, a tortious interference claim might not even accrue until long after, perhaps years af-

---

view, this statement should be read to uphold the dismissal of the claim for punitive damages on the ground that it alleged neither the requisite level of moral culpability (i.e., an "egregious tort") nor conduct directed at the public generally.

6. I would not consider Morgan Stanley's argument, advanced in its reply brief for the first time, that even if an allegation of public harm were not required, IDT fails to allege conduct rising "to the requisite level of wanton and willful wrongdoing" that would justify an award of punitive damages (*see Commissioners of State Ins. Fund v Concord Messenger Serv., Inc.*, 34 AD3d 355 [2006]).

ter, the expiration of the six-year statute of limitations generally applicable to the underlying breach of contract action (CPLR 213 [2]). Rather, the IAS court may have concluded that the validity of a contractual obligation must be established before a cause of action accrues for tortiously interfering with the contract only when, as here, the parties to the contract agree to arbitrate all issues relating to the contract, or at least all issues relating to its validity and binding character. If so, I disagree with that conclusion. In my view, the right of a nonparty to the contract to be free of the burdens of defending against an otherwise untimely claim of tortious interference with the contract should not be curtailed by the fortuity that the parties to the contract agreed to arbitration.

Although the majority does not endorse the IAS court's rationale for concluding that the tortious interference claim was not time-barred, the reasoning offered by the majority is plainly flawed. According to the majority, IDT's "damages were not necessarily suffered at the time the contract was breached." That may be so, but it is besides the point. As noted, regardless of precisely when IDT sustained damages on account of Telefonica's breach of the MOU, IDT unquestionably sustained damages no later than May 25, 2001, more than three years before it commenced this action. After all, IDT alleged exactly that in the statement of claim it filed on that date. Accordingly, the majority's entire analysis rests on a principle—that injury need not have been sustained at the same time as the breach— that is entirely irrelevant.

As for IDT's claim for misappropriation of confidential information, Supreme Court correctly concluded that it is governed by a three-year statute of limitations (CPLR 214 [4]; see Demas v Levitsky, 291 AD2d 653, 658 [2002], lv dismissed 98 NY2d 728 [2002]). Supreme Court erred, however, in concluding that there were issues of fact as to when IDT learned of Morgan Stanley's alleged misappropriation of confidential information. When IDT was injured by the alleged acts of misappropriation, "rather than [the date of] the wrongful act of defendant or discovery of the injury by plaintiff, is the relevant date for marking accrual" (Kronos, 81 NY2d at 94). The injuries alleged with respect to this claim are essentially the same as those alleged in the tortious interference cause of action and thus this claim also is time-barred.

IDT's cause of action for breach of fiduciary duty has both legal and equitable components. The legal component, which seeks both compensatory and punitive damages based on Morgan Stanley's alleged breach of fiduciary duties owed to

IDT, is governed by a three-year statute of limitations (*see Carlingford Ctr. Point Assoc. v MR Realty Assoc.*, 4 AD3d 179, 180 [2004]). This portion of the claim is time-barred for the same reason as the tortious interference and misappropriation claims, i.e., it accrued no later than May 25, 2001. Concerning the equitable component, it need not be determined whether IDT is correct in urging a six-year statute of limitations because, as limited by its brief, it seeks only the return of the $10 million fee that Morgan Stanley allegedly extracted from it by economic coercion. Accordingly, the claim is duplicative of IDT's cause of action for unjust enrichment (*see Fesseha v TD Waterhouse Inv. Servs.*, 305 AD2d 268, 269 [2003]; *William Kaufman Org. v Graham & James*, 269 AD2d 171, 173 [2000]), which, as discussed above, should have been dismissed.

Finally, IDT's contention that the equitable tolling doctrine applies with respect to its tortious interference and misappropriation claims is without merit as IDT fails to allege "subsequent and specific actions by defendants [that] kept [it] from timely bringing suit" (*Zumpano v Quinn*, 6 NY3d 666, 674 [2006]).

Accordingly, I would reverse and grant the motion to dismiss in its entirety. [*See* 2006 NY Slip Op 30076(U).]