CAREMATRIX OF MASSACHUSETTS, INC, and Carematrix Corporation Plaintiff,

v.

Robert KAPLAN; Deborah Kaplan–Brooks Robert Kaplan, Administrator to the Estate of Barton Kaplan; and Deborah Kaplan–Brooks, Administratrix to the Estate of Edward Kaplan Defendant.

No. 04 Civ.5703HB.

United States District Court, S.D. New York.

Jan. 3, 2005.

Robert M. Fleischer, Jacobs Partners LLC, Norwalk, CT, for Plaintiff.

Jordan Matthew Freundlich, Garfunkel, Wild & Travis, P.C., Great Neck, NY, for Defendant.

### OPINION & ORDER

BAER, District Judge.

Carematrix of Massachusetts, Inc. and Carematrix Corporation (collectively, "Carematrix" or "Plaintiffs") brought this action against Robert and Deborah Kaplan individually, and in their capacity as administrator to the estates of Barton and Edward Kaplan, respectively (collectively, "Kaplan" or "Defendants"), for breach of contract concerning the sale and ensuing operation of several adult homes and an assisted living facilities. Defendants move to dismiss the Complaint because of a forum selection clause contained in the sale agreement that states, "[a]ll actions and proceedings arising out of or relating to this Agreement shall be heard and determined in a New York state or federal court sitting in Nassau County in the State of New York." (R. Kaplan Ex. 1, Purchase Agreement). In response, Carematrix contends that application of the forum selection clause would be "unreasonable" and, thus, should not be enforced.

### I. BACKGROUND

#### A. Factual Background

#### 1. Purchase Agreement

On July 13, 1998, Defendants' sold six licensed adult homes in New York (the "N.Y. facilities") and one assisted living facility in New Jersey (the "N.J. Facility" or, collectively, "the Facilities") for $100,000,000 and Plaintiffs' assumption of outstanding indebtedness of the Facilities in the approximate aggregate amount of $60,000,000. (Zaccaro Aff. at ¶¶ 6, 8). The agreement was memorialized in the Purchase Agreement and Disclosure Schedule ("Purchase Agreement").

#### 2. Operating Agreement and Amended Purchase Agreement

On August 31, 1998, following the execution of the Purchase Agreement, the parties entered into an Operating Agreement whereby Carematrix engaged Robert Kaplan, Deborah Kaplan–Brooks, Barton Kaplan, and Edward Kaplan, to operate the Facilities. (R. Kaplan Ex. 2, Operating Agreement). Pursuant to the terms of the Operating Agreement, Defendants collected a monthly operating fee that ranged from $80,000 to $100,000 and "approximately $4,500,000 as an advance towards the operating fees and for costs and expenses associated with the operation of the facilities." (Zaccaro Aff. at ¶ 9).

#### 3. Bankruptcy

In November 2000, because of the alleged failure of Defendants to properly maintain the N.Y. facilities, Plaintiffs filed for Chapter 11 Bankruptcy. (Zaccaro Aff. at ¶ 18). An Official Committee of Unsecured Creditors was appointed and Defendant, Robert Kaplan, was a member of the Committee. (Zaccaro Aff. at ¶ 19). As part of the reorganization plan, Carematrix closed six of its Facilities (Compl. ¶ 13) (Carematrix owned other assisted living facilities in addition to those six involved in the deal) and "the Plaintiffs and the Creditors Committee were adamant that Plaintiffs not release any claims against the Defendants, including the specific claims that are the subject of the Complaint," (Zaccaro Aff. at ¶ 26), to wit, misrepresentation, breach of fiduciary duty and breach of contract. (Compl. ¶¶ 42—69).

#### 4. Settlement Agreement

Later, in March 2001, according to Robert Kaplan, Carematrix and the Defendants agreed to a settlement which, in pertinent part, resolved all remaining disputes between the Defendants and other

parties regarding their respective obligations under the Purchase Agreement and Operating Agreement. (R. Kaplan, Ex. 4, Settlement Agreement) ("Settlement Agreement"). As part of the Settlement Agreement, certain parties, "waived their claims in bankruptcy against Carematrix." (Settlement Agreement at 12). However, the Settlement Agreement "was never approved by the bankruptcy court ... because it was determined that bankruptcy court approval was not required since the Plaintiffs were not parties to the Settlement Agreement and were not releasing any claims against the Defendants." (Zaccaro Aff. at ¶ 30).

### 5. Amended Operating Agreement

Carematrix's claims against Defendants, arising from the Defendants' alleged failure to perform in accordance with the Operating Agreement, were eventually resolved and, on July 25, 2001, the parties entered into an Amended Operating Agreement. (Compl.¶ 36). The terms of the Amended Operating Agreement required Defendants to take "certain actions as conditions precedent to the effectiveness of the Amended Operating Agreement."

### 6. Complaint

Carematrix contends that Defendants failed to perform the Purchase Agreement and the Amended Operating Agreement and, consequently, the value of the Facilities has declined. (Compl.¶ 41). Accordingly, on July 21, 2004, Carematrix filed the instant action in the United States District Court for the Southern District of New York alleging (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) breach of fiduciary duty, (4) breach of the Purchase Agreement, (5) breach of the Operating Agreement, and (6) breach of the Amended Operating Agreement

## II. APPLICABLE STANDARD

The Federal Rules of Civil procedure fail to delineate a specific procedural device by which to adjudicate a motion to dismiss based on an action being brought in a district outside the clause and where part of the clause is inoperable. What is clear is that the district court has the power to "decline jurisdiction as a means of enforcing a valid forum selection clause in a contract," *Id.* at 357, and too that, the weight of authority leans in favor of enforcing valid forum selection "clauses." *Mediter. Shipping Co. S.A. Geneva v. POL–Atl.*, 229 F.3d 397 (2d Cir.2000).

A forum selection clause is presumed to be valid, and the plaintiff "who brought suit in a forum other than the one designated by the forum selection clause," must "make a strong showing in order to overcome the presumption of enforceability." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997).

To overcome the presumption of validity, a party must demonstrate that the application of a forum selection clause would be "unreasonable." *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Second Circuit has construed this exception narrowly, and forum selection clauses are deemed "unreasonable" only:

(A) If their incorporation into the agreement was the result of fraud or overreaching;

(B) If the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum;

(C) If the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or

(D) If the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362–63 (2d Cir.1993) (*citing Bremen*, 407 U.S. at 10—15, 92 S.Ct. 1907). Indeed, "the Second Circuit has developed a policy of honoring forum selection clauses." *Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262, 2004 WL 421793, at *3 (S.D.N.Y.2004).[1]

## III. Discussion

The unique circumstances surrounding the forum selection clause in this case is a matter of first impression for this District.

At the time the Purchase Agreement was signed, there was a United States District Court for the Eastern District of New York located in the Village of Uniondale, County of Nassau, State of New York. ("Uniondale District Court"). In the summer of 2000, however, the United States District Court for the East District New York closed its Uniondale Courthouse, but the forum selection clause in the Purchase Agreement remained unchanged:

> All actions and proceedings arising out of or relating to this Agreement shall be heard and determined in a New York state or federal court sitting in Nassau County in the State of New York, and the parties hereto hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such action or proceeding.

(R. Kaplan Ex. 1, Purchase Agreement). Carematrix does not dispute the validity of the forum selection clause, rather its application. According to Carematrix, the terms of the Purchase Agreement clearly provides that any dispute may be brought in state or federal court in Nassau County, New York, but 'the way things are,' the forum selection clause would unreasonably require Carematrix's claim to be brought in state court in Nassau County since the federal court in Uniondale is no more.

### A. Fraud or Overreaching

The parties do not dispute the validity of the forum selection clause.

### B. Inconvenience

■ To establish the unreasonableness of a forum selection clause, the plaintiff may demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Bremen*, 407 U.S. at 18, 92 S.Ct. 1907. Not so here.

### C. Fundamental Fairness

Carematrix also argues that the forum-selection clause should not be enforced because it violates notions of fundamental fairness. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). According to Carematrix, the application of the forum selection clause would ignore the intent of the parties and violate the spirit of the Purchase Agreement.

Any review of a forum-selection clause for "fundamental fairness" must begin with the seminal case of *Carnival Cruise Lines v. Shute*. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In *Carnival*, the Supreme Court examined the fairness of a forum-selection clause embedded in a contract of adhesion between a large

---

1. *See also New Moon Shipping Co.*, 121 F.3d at 29 (2d Cir.1997) (forum selection clauses are enforceable unless unreasonable or product of fraud); *Stamm v. Barclay's Bank of N.Y.*, 960 F.Supp. 724, 729 (S.D.N.Y.1997) (enforceable unless "clear showing" that the clause was "unreasonable or unjust").

international company and individual passengers. The Court specifically rejected the plaintiff's argument that the non-negotiated forum selection clause in a form contract was unenforceable because it was not the subject of the bargain. *See Carnival Cruise Lines,* 499 U.S. at 595, 111 S.Ct. 1522.

In *HNY Assoc. L.L.C. v. Summit Resort Prop., Inc.,* No. 01 Civ. 0428, 2001 WL 456250 (S.D.N.Y. Apr. 30, 2001) (Baer, J.), this Court applied the reasoning of *Carnival* to a forum selection clause that was allegedly the result of unequal bargaining power. The decision to enforce the forum-selection clause in contract was, in part, dependent upon the sophistication of the parties:

> [I]t is self-evident that the choice of forum in this case—incorporated into a contract between sophisticated parties through which the plaintiff received a fee of nearly $200,000—is not unreasonable simply because it was not a negotiated term. The law does not relieve a commercial entity of an obligation knowingly assumed simply because the complaining party lacked the bargaining leverage to avoid the unwanted contract term.

*HNY Assoc.,* 2001 WL 456250, at *2 (Baer, J.).

■ Here, sophisticated parties certainly negotiated the terms of the Purchase Agreement. The parties retained both outside legal counsel and accounting advisors.[2] Carematrix retained the legal services of Cadwalader Wickersham & Taft and the accounting services of Coopers & Lybrand. Similarly, Defendants retained the legal services of Shearman & Sterling, and the accounting firm of KPMG Peat Marwick. (R. Kaplan Decl. at ¶ 6). These

venerable law and accounting firms vigorously negotiated on behalf of their clients and the Purchase Agreement was the product of their efforts.

Accordingly, pursuant to *Bremen* and its progeny, the forum selection clause was made in an arms-length negotiation, by experienced and sophisticated businessmen, and Carematrix failed to demonstrate a compelling countervailing reason why the parties should not honor it. *See Bremen,* 407 U.S. at 12, 92 S.Ct. 1907.

**D. Contravention of a Strong Public Policy in the Forum State**

Plaintiff has not attempted to satisfy the fourth exception by arguing that either New York law would be fundamentally unfair in resolving this contract dispute, or that the enforcement of forum selection clause contravenes New York public policy. *See LSP–Kendall Energy, LLC v. Dick Corp.,* No. 03 Civ. 2751, 2003 WL 21705223, at *2 (S.D.N.Y. July 23, 2003). Indeed, such an effort would have been futile since the forum selection clause requires that whether the case was adjudicated in federal or state court, New York substantive law would have been applied.

**IV. TRANSFER OR DISMISS**

■ "Whether a court should dismiss or transfer [a case] depends upon which remedy is most consistent with the forum selection clause." *HNY Associates,* 2001 WL 456250, at *2 (Baer, J.). Plaintiff argued that if the Court enforces the forum selection clause it should transfer the case to another court or district. However, the forum selection clause provides that the case be transferred to "New York state or federal court sitting in Nassau County in the State of New York." Despite

---

2. In addition, Defendants "provided Plaintiffs and their representatives with various financial records pertaining to the companies and the Facilities, including, but not limited to, interim balance sheets, consolidated/combined interim balance sheets, and an interim financial statement of combined income." (Compl. at ¶ 24).

Plaintiff's seemingly reasonable argument that the court should transfer the case to the state court in Nassau County, I lack the statutory authority to transfer the case to state court:

> Section 1404(a), by its very terms, speaks to federal courts; it addresses itself only to that federal forum in which a lawsuit has been initiated; its function is to vest such a federal forum with the power to transfer a transitory cause of action to a more convenient federal court. It does not speak to state courts, and it says nothing concerning the power of some court other than the forum where a lawsuit is initiated to enjoin the litigant from further prosecuting a transitory cause of action in some other jurisdiction.

*Pope v. Atlantic Coast Line R.R. Co.,* 345 U.S. 379, 73 S.Ct. 749, 97 L.Ed. 1094 (1953); *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (holding that transfer under § 1404(a) is inappropriate where party seeks dismissal or remand to state court); *GMAC Comm. Credit, LLC v. Dillard Dept. Stores, Inc.,* 198 F.R.D. 402, 409 (S.D.N.Y.2001).

Compliance with the forum selection clause might be accomplished by a consensual transfer to the United States District Court for the Eastern District of New York. This, in my view, should have already happened assuming the parties are serious about litigating. Not to have done so has made this a time consuming effort and obviously expensive for the respective clients.

### V. CONCLUSION

In either event, communicate with me by letter within two weeks from the date hereof. If you agree to the Eastern District, I will make the transfer and you need not start from scratch. If you do not, a course not advocated by this Court, but clearly within your purview, the matter will be dismissed and the case closed on my docket come January 13, 2005 and, at that time,

The Clerk will be directed to close this motion and any other open motions.

**IT IS SO ORDERED.**