**Shirley Y. KWAN, Plaintiff,**

v.

**Alan M. SCHLEIN, Michael L. Sankey, Carl R. Ernst, J.J. Newby, Peter J. Weber, Business Resources Bureau Inc., BRB Publications, Facts on Demand Press, Schlein News Bureau, And John/Jane Doe Defendants.**

**No. 05 Civ. 459(SHS).**

United States District Court, S.D. New York.

July 14, 2006.

**494**

Shirley Y. Kwan, New York City, pro se.

Scott Christopher Paton, McNamee, Lochner, Titus & Williams, P.C., Albany, NY, for Michael Sankey, BRB Publications, Business Resource Bureau, Inc., Peter J. Weber, defendants.

Scott Christopher Paton, Glen P. Doherty, McNamee, Lochner, Titus & Williams, P.C., Albany, NY, for Carl R. Ernst, defendant.

Lawrence D. Bernfeld, Graubard Miller, New York City, for Schlein News Bureau, defendant.

## OPINION & ORDER

STEIN, District Judge.

Plaintiff Shirley Y. Kwan brings this action pro se for, among other claims, breach of contract, unfair competition and copyright infringement in connection with the publication of "Find it Online," a book designed to assist internet users in conducting web searches. Kwan, who contends that she co-authored the book with defendant Alan Schlein, is suing both Schlein and Business Resource Bureau, Inc. ("BRB"), the book's publishing company, as well as various individuals associated with the book project. Kwan asserts that Schlein and BRB CEO Michael Sankey promised her co-author credit and appropriate compensation for her work in helping to author the book, and that to date she has received neither. In addition to various claims stemming from that allegedly broken promise, Kwan alleges that Schlein and BRB infringed her copyright in "Find it Online" and wrongfully filed their own copyright for the book.

The defendants—Schlein separately—have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 4 and 12(b)(6),[1] contending that (i) they were improperly served; (ii) Kwan cannot satisfy the elements of each of her claims; and (iii) most of Kwan's claims, having as their genesis a date in 1998, are barred by the applicable statutes of limitation. As discussed below, Kwan's complaint is dismissed without prejudice for improper service as to each of the defendants except Schlein. As to Schlein, Kwan has stated a claim for racial discrimination and unfair competition. However, her breach of contract claim is barred by the New York Statute of Frauds; her copyright claim is barred by the Copyright Act's statute of limitations; and her remaining claims also fail, some on the merits and some because they fall outside of the relevant statutes of limitation.

## I. BACKGROUND

The facts as alleged in the complaint are as follows:

In August 1998, Kwan signed a contract with defendant Business Resources Bureau, Inc.[2] ("BRB") to serve as an editor

---

1. Schlein filed a motion to dismiss Kwan's complaint pursuant to Rule 12(b)(6) and Rule 4. BRB, together with each of the individual defendants except J.J. Newby, filed a hybrid motion to dismiss and motion for judgment on the pleadings. The Court does not reach the latter aspect of BRB's motion because it dismisses the case as to those defendants for improper service.

2. All references in this Opinion to BRB are intended to encompass not only Business Resources Bureau, Inc., but also "BRB Publications" and "Facts on Demand Press," who Kwan also sues and who appear to be BRB affiliates. Though BRB asserts that it is incorrectly sued under each of these entities, the Court will not resolve that question because service as to the BRB entities was improper, *see infra*.

for "Find it Online," a guide to internet searching that was to be principally authored by defendant Alan M. Schlein. Complaint ("Compl.") ¶ 2. In accordance with that contract, Kwan contends that she was to receive $2,000 as well as 20 percent of royalties for the book. *Id.* However, despite having agreed to perform only a limited editorial task, Kwan's role expanded as the project continued. According to Kwan, she helped Schlein draft an outline; composed the book's table of contents; targeted a niche market for the book; and wrote and rewrote large portions of the manuscript. *Id.* ¶¶ 3, 6.

To reflect this unexpectedly enhanced role, Kwan claims, Schlein and BRB President Michael Sankey promised her "cover credit commensurate with [her] contributions," as well as increased compensation. *Id.* ¶¶ 4, 5. Schlein allegedly informed her that his own contract with BRB was being amended to accommodate the heightened responsibilities and credit accorded to Kwan. *Id.* ¶ 5. No written contract was signed between Kwan and either Schlein or BRB, however, and Kwan continued to work on the book through the fall of 1998 while repeatedly requesting that their agreement be reduced to writing. *Id.* ¶ 6.

In December, Sankey sent Kwan a copy of the allegedly revised contract between Schlein and BRB, which did not contain any new provisions encompassing the oral agreement she claims she had with the parties. *Id.* ¶ 10. Still, Kwan asserts, Sankey confirmed on more than one occasion thereafter—by phone and by e-mail—that she would receive the co-author credit she had been promised. *Id.* ¶¶ 10, 12. But that promise was short-lived; on December 23, Sankey informed Kwan that he wanted Schlein to be sole author. *Id.* ¶ 13. Accordingly, the book was published in February 1999 with Schlein listed as the only author; Kwan was recognized as one of three editors. *Id.* ¶ 15. Additionally,

one month before its publication, BRB and Schlein filed copyright registrations for "Find it Online" and listed themselves as joint authors. *Id.* ¶ 14.

In the intervening years, three further editions of "Find it Online" have been published, including the most recent, August 2004 edition. *Id.* ¶¶ 16, 18, 21. It is unclear which of these editions were actually copyrighted by any of the defendants. Kwan's name, listed as an editor for the second edition, was omitted entirely from the third and fourth editions. *Id.* ¶¶ 18, 21. She also stopped receiving royalty payments after the second edition. *Id.* According to Kwan, for the last several years Schlein has wrongfully touted his sole authorship of "Find it Online" at lectures and in workshops, and has received several accolades for his work on the book. *Id.* ¶ 23.

Frustrated at this sequence of events, Kwan did two things: she brought suit in January of 2005, and filed her own copyright registration for "Find it Online" shortly thereafter, claiming to be a joint author with Schlein. *Id.* ¶ 22. By an Order dated January 14, 2005, Chief Judge Mukasey dismissed Kwan's complaint pursuant to Fed.R.Civ.P. 8 for failure to plead the facts underlying her claims and granted Kwan leave to file an amended complaint. Kwan then filed a new complaint in March 2005, and the case was assigned to this Court. Kwan lists as defendants not only Schlein and BRB, but also individual defendants Sankey, Peter Weber and J.J. Newby (other editors of "Find it Online") and Carl R. Ernst (a minority shareholder in BRB). Each of the defendants except Newby have moved to dismiss the complaint.

Kwan's complaint alleges a host of wrongs. In addition to claims of copyright infringement, breach of contract and unfair competition, Kwan purports to state a claim for "fraudulent notice of copyright,"

"false representation on associated applications," sexual harassment, conspiracy, fraud, deceit and misrepresentation, debt, defamation, tortious interference with pre-contractual relations, race discrimination, and gender discrimination. *Id.* ¶ 26. For the reasons discussed below, Kwan's complaint is dismissed without prejudice as to each of the defendants except Schlein, and dismissed in part as to defendant Schlein. Schlein's motion to dismiss is granted in part, but it is denied with respect to Kwan's claims of racial discrimination and unfair competition.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss for Improper Service

Each of the defendants has moved pursuant to Fed.R.Civ.P. 12(b)(5) to dismiss Kwan's complaint on the grounds that service was improper. Once challenged, the burden of establishing that service was proper lies with the plaintiff. *See Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F.Supp.2d 382, 387 (S.D.N.Y.2002).

#### 1. Service upon BRB

For domestic corporate defendants, service must be made upon "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" or pursuant to the laws of the state in which the district court was located or in which service was effected. Fed.R.Civ.P. 4(h)(1). Both New York law (where the Court is located) and Arizona law (where service was effected) largely mirror federal law in requiring corporate service to be made upon an offi-cer, director, agent, or similarly high-ranking corporate official. *See* N.Y. C.P.L.R. 311(a); Ariz. R. Civ. P. 4.1(k).

█ The U.S. Marshals effected service upon BRB[3] by serving Annette Jackson, who in the "Process Receipt and Return" is listed as BRB's "Office Manager." Kwan offers no evidence that Jackson is an officer or other similarly high-ranking official at BRB. Nor is it clear whether Jackson is "invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it," *Grammenos v. Lemos,* 457 F.2d 1067, 1073 (2d Cir.1972), which would make her an agent. Indeed, Jackson herself purports to be BRB's director of customer services, *see* Affidavit of Annette Jackson dated July 21, 2005, at 1, a title that—unlike, for example, CEO—does not on its face suggest that she is an officer or agent of the company. Finally, Jackson claims that she has never been authorized to accept service on behalf of BRB and that she did not hold herself out as such to the process server. *Id.* at 2. Without offering any information to the contrary, Kwan cannot meet her burden of establishing proper service. *See Kwon v. Yun,* No. 05–Civ.–1142, 2006 WL 416375, *2, *4, 2006 U.S. Dist. LEXIS 7386 at *7, 15 (S.D.N.Y. Feb. 21, 2006) (noting that "[t]he burden on a motion to dismiss for insufficient service of process rests with the plaintiff, who must ... make a prima facie showing that service was proper" and concluding that plaintiff had not demonstrated that person served was a corporate agent of the defendant).[4] Therefore,

---

3. As noted above, the analysis with respect to BRB encompasses BRB affiliates and defendants BRB Publications and Facts on Demand Press, who were also served via Annette Jackson. Additionally, Kwan's suit is dismissed without prejudice as to "Schlein News Bureau" and J.J. Newby, neither of who were ever served.

4. Kwan does not even contend that an officer, agent, or other similarly high-ranking official was served. Instead, she asserts that "[b]oth statutes and case law are voluminous and extensive in their definition of service and include service to receptions of a corporation, as well as office managers." Plaintiff's Opposition to Motion to Dismiss Complaint dated

Kwan's claims against BRB are dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(5).

### 2. Service Upon the Individual Defendants Except Schlein

Service upon individuals must be made either personally or "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed.R.Civ.P. 4(e). In New York, service upon individuals can be made personally or by delivering the summons "to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served" and by mailing the summons to the person at his home or office within 20 days of the delivery. N.Y. CPLR § 308(2). If the mailing is to the person's office, it must be made within 20 days of the delivery. *Id.* In Arizona, service upon individuals can be personally, upon an authorized agent, or by leaving the summons and complaint at the defendant's "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Ariz. R. Civ. Pro. 4.1(d).

■ Here, none of those potential valid means of service was employed. Service upon defendants Michael Sankey, Carl Ernst, and Peter Weber was made by serving Jackson. Because none of them were served personally, by an agent, or at home, service was not effective pursuant to federal or Arizona law. Because New York law authorizes office service, service upon Jackson may have been effective with regard to Sankey and Weber, BRB employees. *See* Affidavit of Michael Sankey July 25, 2005 at 1; Affidavit of Peter Weber dated July 21, 2005, at 1. However, the marshals' "Process Receipt and Return" as to both defendants indicates that an attempt to serve each of them by mail was made on May 25, 2005, which is not within 20 days of the delivery to Jackson on July 6, 2005 as required by N.Y. C.P.L.R. § 308(2). Finally, service upon Ernst was improper because, despite being a minority shareholder in BRB, he is not an employee and there is no indication that he was served at his "actual place of business." Affidavit of Carl R. Ernst dated July 22, 2005, at 1. Kwan's claims against Ernst, Sankey and Weber are therefore dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(5).[5]

### 3. Service Upon Schlein

■ Schlein, unlike the other defendants, was served personally, but moves to dismiss the complaint on the grounds that service was not made within 120 days after the filing of the complaint as required by Fed.R.Civ.P. 4(m). Schlein was served in September of 2005, just over two months beyond the 120–day mark. Rule 4(m) permits the Court to extend the time for service where good cause for delay exists, and therefore to deny a motion to dismiss where service occurred late. *See Johnson v. Fleet,* 371 F.Supp.2d 155, 158–59 (D.Conn.2005) (retroactive application of Rule 4(m) given pro se plaintiff's diligent efforts to effect service); *Manko v.*

---

Aug. 5, 2005, at ¶ 11. The case law is to the contrary. *See Pope v. Rice,* No. 04–Civ.–4171, 2005 WL 613085, *14, 2005 U.S. Dist. LEXIS 4011, at *47 (S.D.N.Y. Mar. 14, 2005) (service upon receptionist improper); *Fujun Jiao v. First Int'l Travel, Inc.,* No. 03–Civ.–0165, 2004 WL 1737715, 2004 U.S. Dist. LEXIS 14920 (S.D.N.Y. Aug. 4, 2004) (same); *Arce v. Sybron Corp.,* 82 A.D.2d 308, 312–14, 441 N.Y.S.2d 498, 501–02 (2d Dep't 1981) (same).

**5.** Should plaintiff decide to re-serve her complaint, she should more carefully consider whether any of her claims are properly brought against these individual defendants. Kwan does not even mention Ernst in the text of her complaint; notes only that Weber was one of several editors of "Find it Online;" and does not suggest in any way how Sankey should be liable in his individual, rather than his corporate, capacity.

*Deutsche Bank,* No. 02–Civ.–10180, 2004 WL 574659, *3, 2004 U.S. Dist. LEXIS 4665, at *9 (S.D.N.Y. Mar. 19, 2004) (noting that "a complaint served on a defendant more than 120 days after its filing must be dismissed unless plaintiff can show good cause for the untimely service"). Here, Kwan's opposition to Schlein's motion to dismiss describes in detail both her efforts to locate Schlein and her repeated correspondence as a pro se plaintiff with the U.S. Marshall's Office attempting to effect proper service, which for pro se plaintiffs typically suffices to warrant a Rule 4(m) extension. *See Kavazanjian v. Rice,* 03–Cv.–1923, 2005 WL 1377946, *2, 2005 U.S. Dist. LEXIS 13653 (E.D.N.Y. June 7, 2005) (citing the "numerous courts that have held that good cause under Rule 4(m) is automatically established when the Marshal's Office has failed to effect service so long as the plaintiff has provided the information necessary to identify the defendants"). Accordingly, because Kwan has demonstrated good cause for the delay, the Court will not dismiss the complaint for improper service pursuant to Rule 4(m).

This is so even given Schlein's contention that the copy of the complaint he received was missing pages. Schlein was able to secure the missing pages and shortly thereafter requested and received a 60–day extension to file his motion in light of the mishap. Because Schlein has actually been served and has had sufficient notice and time to respond to the complaint, he has suffered no material prejudice warranting a dismissal of the present action. *Cf. Young v. Car Rental Claims, Inc.,* 255 F.Supp.2d 1149, 1153 (D.Hawaii 2003) (service of complaint that was missing pages excused where defendant was served with amended complaint containing all pages and therefore suffered no prejudice).

## B. Schlein's Motion to Dismiss for Failure to State a Claim

Schlein, the only remaining defendant, has moved to dismiss each of Kwan's claims pursuant to Fed.R.Civ.P. 12(b)(6). The Court can grant a 12(b)(6) motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 171 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (quotation marks omitted). In reviewing a motion to dismiss, the court must treat all of the factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000); *Lee v. Bankers Trust Co.,* 166 F.3d 540 (2d Cir.1999).

### 1. Kwan's Federal Claims

#### a. Copyright Infringement

■ Kwan's assertion that Schlein infringed her copyright in "Find it Online" fails as a matter of law because Kwan admits that she and Schlein co-authored the book and that the copyright she later registered listed her and Schlein as its "joint authors." Compl. ¶ 22. Because Schlein is also an author of the book, he cannot have infringed Kwan's copyright. *See Weissmann v. Freeman,* 868 F.2d 1313, 1318 (2d Cir.1989) ("An action for infringement between joint authors will not lie because an individual cannot infringe his own copyright."); *Davis v. Blige,* 419 F.Supp.2d 493, 500 (S.D.N.Y. 2005) (same). However, as an alleged co-author, Kwan can seek a declaration of co-ownership rights. *See Merchant v. Levy,* 92 F.3d 51, 55 (2d Cir.1996). The Court, obliged to construe pro se plaintiffs' complaints liberally, *McEachin v. McGuinnis,* 357 F.3d 197, 201 (2d Cir.2004), will there-

fore treat Kwan's claim against Schlein as one for a declaration of co-authorship rights. *See Netzer v. Continuity Graphic Assocs.*, 963 F.Supp. 1308, 1315 (S.D.N.Y. 1997) (reforming an infringement claim to state a co-authorship claim).

■ So construed, Kwan's claim is time-barred because of the Copyright Act's three-year statute of limitations. *See* 17 U.S.C. § 507(b). On the one hand, acts of copyright infringement that occurred within three years of a complaint are not time-barred even though the infringing activity commenced outside of the limitations period. *See Stone v. Williams*, 970 F.2d 1043, 1049–50 (2d Cir.1992) (noting that, in infringement cases, "[r]ecovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts"). However, the Second Circuit has held that co-authorship claims accrue once and for all when the plaintiff knows or should have known that an alleged co-author has been injured by his co-author's claim of exclusive copyright in the subject work. *See Merchant*, 92 F.3d at 56 ("[P]laintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration."); *see also Newsome v. Brown*, No. 01–Civ.–2807, 2005 WL 627639, *5, 2005 U.S. Dist. LEXIS 4088 at *13 (S.D.N.Y. Mar. 15, 2005) (same). Here, the first edition of "Find it Online" was copyrighted by Schlein in January of 1999, six years prior to the filing of the complaint in this action. Even applying the more liberal discovery rule, Kwan knew or should have known in 1999—when the book was published—or shortly thereafter that she had been injured by Schlein's copyright declaration of authorship, particularly because in late 1998 she had been engaged in a dispute with BRB over the very issue of copyright. Therefore, because Kwan cannot state a claim for in-

fringement and because any claim for a declaration of co-authorship rights is barred by the statute of limitations, Kwan's copyright claim against Schlein is dismissed.

#### b. Sexual Harassment

An entirely distinct set of facts forms the basis of Kwan's sexual harassment claim. Specifically, Kwan contends that, while she and Schlein were working on the "Find it Online" manuscript, Schlein "became increasingly unstable and abusive ... and frequently refused to discuss chapter revisions until after recounting his sexual forays" and that he "insisted that [she] email him at 'dcsexy@hotmail.com.'" Compl. ¶ 7.

Kwan's sexual harassment claim is time-barred. Title VII requires claimants in "deferral" states—i.e., states where a designated state or local agency has jurisdiction to consider discriminatory employment claims—such as New York to file a charge with the EEOC within 300 days of the alleged wrongful action. *See* 42 U.S.C. 2000e(5); *Valentine v. Standard & Poor's*, 50 F.Supp.2d 262, 280–81 (S.D.N.Y.1999). Kwan did not file such a charge within 300 days. *See also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (statutory filing requirement "analogous to a statute of limitations"). Similarly, sexual harassment claims under the New York City and State human rights laws are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d); *Hill v. Citibank Corp.*, 312 F.Supp.2d 464, 474 (S.D.N.Y.2004). Thus, whether brought pursuant federal or state law, Kwan's sexual harassment claims are time-barred.

#### c. Race and Gender Discrimination

Although plaintiff's complaint does not specify whether she brings her discrimina-

tion claims pursuant to federal or state law, her opposition to Schlein's motion to dismiss clarifies that her claims are federal ones. *See* Opposition to Motion to Dismiss Complaint dated Dec. 27, 2005, at 13 (referencing only federal law). To the extent that Kwan acted as Schlein's employee, she cannot press any claims under Title VII of the Civil Rights Act of 1964 in this forum because she has never filed a charge with the Equal Employment Opportunity Commission ("EEOC") or a qualified state deferral agency. *See* 42 U.S.C. § 2000e–5; *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991).

■ Apart from Title VII, however, Kwan may possess a claim pursuant to 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts and does not require an employer-employee relationship. *See* 42 U.S.C. § 1981; *Wortham v. Am. Family Ins. Group*, 385 F.3d 1139, 1141 (8th Cir. 2004) (independent contractors have right of action under section 1981); *Danco, Inc. v. Wal–Mart Stores, Inc.*, 178 F.3d 8, 14 (1st Cir.1999) (same). "To establish a section 1981 claim, a plaintiff must prove the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Joseph v. New York Yankees Pshp.*, No. 00–Civ.–2275, 2000 WL 1559019, *2, 2000 U.S. Dist. LEXIS 15417, at *6 (S.D.N.Y. Oct. 19, 2000).

■ Here, Kwan has pled that she is Asian and that Schlein and BRB officials denied her ongoing participation in the book because she was Asian while treating all other similarly situated non-minority participants differently. Additionally, the discrimination concerned an "activit[y] enumerated in the statute" because her claim is effectively that she was denied the ability to "make [a] contract." *See* 42 U.S.C. § 1981(b). Since Kwan need plead no more than "a short and plain statement of the claim showing that [she] is entitled to relief" to survive a motion to dismiss, the Court must deny Schlein's motion insofar as it relates to Kwan's claim for racial discrimination. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (setting pleading standard for 42 U.S.C. § 1983 action); *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298–99 (2d Cir.2003) (applying *Swierkiewicz* to a section 1981 case). While Kwan will eventually have to prove that Schlein *intentionally* discriminated against her, *General Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 388, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), it is enough to survive the present motion to dismiss that she so contends.

■ Finally, Kwan's discrimination claim is not time-barred, as Schlein contends. Section 1981 actions are governed by the state statutes of limitation applicable to personal injury claims, which is three years in New York, *see* N.Y. C.P.L.R. 214(5); *Frank v. New York State Elec. & Gas*, 871 F.Supp. 167, 172–73 (S.D.N.Y.1994). Kwan has alleged violations during the last three years by claiming that Schlein has refused to allow her to participate in later editions of the book.

### 2. Kwan's State Law Claims

■ As an initial matter, New York law applies to each of Kwan's non-federal claims, whether based in contract or in tort. In determining which state's law applies, this Court is guided by the conflict-of-law principles of the state in which the Court is located, namely New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While the application of New York conflicts principles likely yields the choice of New York law, in any event the

parties' mutual decision to brief only New York law ends the inquiry. *3Com Corp. v. Banco do Brasil, S.A.,* 171 F.3d 739, 743 (2d Cir.1999) ("The parties rely exclusively on New York substantive law, and 'where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.'"") (quoting *American Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997)).

### a. Breach of Contract [6]

Kwan contends that in consideration for her enhanced role in penning "Find it Online," Schlein and BRB promised to give her both co-author credit and increased compensation, and that to this date she has received neither. In response, Schlein contends that (i) Kwan's complaint fails to allege a contract between Kwan and Schlein or the nature of any breach of such a contract; (ii) New York's statute of frauds required any such contract to be in writing; and (iii) in any event, New York's statute of limitations for contract renders any valid contract claim untimely because Kwan was aware that she would not receive credit or compensation by December 1999, when she received a copy of Schlein's contract with BRB that did not stipulate to her previously agreed-upon enhanced role.

Kwan's complaint sufficiently asserts both the existence of a contract and a breach of that contract. Specifically, Kwan claims that in exchange for the assistance she provided Schlein in authoring "Find it Online," Schlein and BRB agreed to credit her as a co-author of the project and pay her accordingly. If true, this agreement, which includes a bargained-for promise supported by consideration, is sufficient to establish a contract. *See* Restatement (Second) of Contracts § 17.

█ Additionally, Kwan's contract claim is not barred by the statute of limitations because she appears to be alleging a "continuing breach," i.e. a breach that while beginning in 1999 continues to accrue through the present day. Where a contract calls for continuous performance, it is "capable of a series of 'partial' breaches, as well as a single total breach by repudiation or by such a material failure of performance when due as to go 'to the essence' and frustrate substantially the purpose for which the contract was agreed to by the injured party." 4 Corbin on Contracts, Ch. 53 § 956 (1951); *see also Won's Cards, Inc. v. Samsondale/Haverstraw Equities, Ltd.,* 165 A.D.2d 157, 163, 566 N.Y.S.2d 412 (N.Y.App.Div.1991) (recognizing continuing breach concept). If the breaches are partial and ongoing, each one re-commences the statute of limitations such that damages can be awarded beginning "from the date calculated by subtracting the limitations period from the date of filing." *West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 546 (2d Cir.1990). Kwan contends that the contract at issue called for continuous performance by Schlein and BRB in that they were to provide her with co-author credit and compensation not just at the moment of contracting but, essentially, for as long as the book continued to be sold. In other words, if Kwan is correct, Schlein and BRB were to give her co-author credit and royalties into perpetuity, such that the ongoing breach of that promise continues to arise. This is sufficient, at least at this early stage in the litigation, to satisfy statute of limitations concerns.

█ However, for the same reason that Kwan's contract claim may not be time-barred, it is barred by the Statute of

---

**6.** Though Kwan has sued Schlein for "debt," there is no such common law cause of action. The Court will construe Kwan's debt claim as encompassed within her breach of contract claim, since any money owed between the parties arose from the alleged contract.

Frauds. In New York, a contract that "by its terms is not to be performed within one year from the making thereof" is void if it is not in writing. NY Gen. Obl. Law § 5–701(a)(1); *American Fed. Group v. Rothenberg*, 136 F.3d 897, 909 (2d Cir.1998). If Kwan is correct to contend that the contract requires continuous performance—i.e., that Schlein and BRB continue to label "Find It Online" as coauthored by Kwan and continue to pay Kwan royalties—it falls within the ambit of the Statute of Frauds because it cannot be performed within a year. In this way, the statutes of limitation and frauds operate in tandem to bar Kwan's claim: the contract either required ongoing performance such that it is void because it is not in writing, or was susceptible to immediate performance and is therefore barred by the statute of limitations.

Kwan asserts that "the N.Y. Statute of Frauds states that ... the contracts can be oral," but this simply misreads New York law. Moreover, the cases Kwan cites—*Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953); *Beckwith v. Talbot*, 95 U.S. 289, 5 Otto 289, 24 L.Ed. 496 (1877)—regard the parol evidence rule and do not advance her argument. Though parol evidence is admissible "to portray the circumstances surrounding the making" of a contract, *see Crabtree*, 110 N.E.2d at 554, even *Crabtree* acknowledges that the "essential terms of the contract" must all be in writing if the contract falls within the Statute of Frauds. *Id.; see also Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 298, n. 3 (S.D.N.Y.1997) ("[W]here an alleged contract, as here, is indefinite as to duration and does not, by its terms, permit the defendant to discharge its performance obligations in less than one year, the statute requires a writing setting forth the essential terms of the agreement."). Kwan admits that no such writing setting forth all the essential terms of the agreement ex-

ists, and her claim is therefore barred by the Statute of Frauds.

### b. Unfair Competition

Kwan asserts that Schlein committed unfair competition by claiming to be the sole author of "Find it Online" and by putting himself forth as such at various public fora from 1998 to the present time. *See* Compl. ¶¶ 15, 23. In response, Schlein contends without elaboration that "[p]laintiff's complaint fails to spell out the required elements on an unfair competition claim" and that Kwan's claim is barred by the statute of limitations. Memorandum of Defendant Alan M. Schlein in Support of Motion to Dismiss dated November 28, 2005, at 13.

Claims for unfair competition under New York law typically fall into one of two categories: passing off, or malicious or fraudulent interference with good will. *See Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 05–Civ.–8332, 2005 U.S. Dist. LEXIS 10964 at *16 (S.D.N.Y. May 19, 2005) (citing *Fun–Damental Too v. Gemmy Indus. Corp.*, No. 96–1103, 1996 WL 724734, *1, 1996 U.S. Dist. LEXIS 18653 at *2 (S.D.N.Y. Dec. 17, 1996)) (quoting *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 842 (2d Cir.1980)). Passing off claims themselves are of two varieties: "passing off" and "reverse passing off." *Id.* The latter offense is implicated where "defendant has copied plaintiff['s] product and sold it under defendant's name," *Waldman Publishing Corp. v. Landoll, Inc.*, 848 F.Supp. 498, 505 (S.D.N.Y.1994), which risks customer confusion in connection with the source of that product, *see Downloadcard, Inc. v. Universal Music Group*, No. 02–Civ.–7710, 2002 WL 31662924, *2, 2002 U.S. Dist. LEXIS 23081, at *5 (S.D.N.Y. Nov. 26, 2002); *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1280

(S.D.N.Y.1986) (noting that most important element of New York unfair competition claim is consumer confusion); *see also Kaplan v. Stock Mkt. Photo Agency, Inc.,* 133 F.Supp.2d 317, 328 (S.D.N.Y. 2001) (describing a reverse passing off claim as one where "the defendant misappropriates elements of the plaintiff's creation and attempts to pass off those elements as his own").

■ Though Kwan does not specify that her claim sounds particularly in the reverse passing off branch of unfair competition law, the facts alleged do fit within its contours. Specifically, Kwan asserts that Schlein continues to sell and advertise what she claims is her product—"Find it Online"—under his own name, which could result in consumer confusion regarding the source of the book. In the context of federal reverse passing off claims under the Lanham Act, courts have found analogous co-author disputes actionable as unfair competition. *See Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 243 (S.D.N.Y. 1990) (citing *Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403, 1407 (9th Cir. 1988)), aff'd, 923 F.2d 845 (2d Cir.1990) ("Failure to attribute authorship to a co-author resulting in only partially accurate designation of origin constitutes reverse palming off within the ambit of [federal trademark law]."); *Cleary v. News Corp.,* 30 F.3d 1255, 1260 (9th Cir.1994) (same); *see also Kregos v. Associated Press,* 795 F.Supp. 1325, 1336 (S.D.N.Y.1992) (standards for false designation of origin claims under Lanham Act and New York common law are virtually the same), *aff'd,* 3 F.3d 656 (2d Cir.1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). Because there is no reason why state claims of a similar ilk should be treated differently, the Court will not dismiss Kwan's unfair competition claim for failure to allege the required elements of the tort.

■ Additionally, Kwan's claim is not time-barred because unfair competition occurring over a period of time can give rise to liability as a continuing tort. *See Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.,* No. 04–Civ.–3136, 2005 WL 13682, \*\*7–8, 2005 U.S. Dist. LEXIS 2, \*26–28 & n. 9 (S.D.N.Y. Jan. 3, 2005); *cf. R.G. Barry Corp. v. Mushroom Makers, Inc.,* 108 Misc.2d 113, 118, 436 N.Y.S.2d 927 (1981) (continuing tort theory applicable to New York trade dilution claims). As such, ongoing instances of reverse passing off give rise to successive causes of action. *See R.G. Barry Corp.,* 108 Misc.2d at 118, 436 N.Y.S.2d 927. Since the statute of limitations for an unfair competition claim sounding in reverse passing off is six years, *see Greenlight Capital,* 2005 WL 13682, \*8, 2005 U.S. Dist. LEXIS 2, at \*28, Kwan can recover for any instances of reverse passing off that occurred within the past six years. Of course, to the extent that more recent editions of "Find it Online" are sufficiently different such that they cannot be said to have originated with Kwan, she will not possess a cause of action for unfair competition. *See Kaplan v. Stock Mkt. Photo Agency, Inc.,* 133 F.Supp.2d 317, 329 (S.D.N.Y.2001) (reversing passing off claim will fail absent substantial similarity between plaintiff's creation and defendant's derivative work); *cf. Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 31, 38, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003) (holding, in Lanham Act context, that reverse passing off claims are limited to literal reproductions and do not encompass the copying of ideas or concepts).

c. Fraud

■ Plaintiff's claim for fraud is barred by New York's six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(8); *Santiago v. 1370 Broadway,* 96 N.Y.2d 765, 725 N.Y.S.2d 599, 749 N.E.2d 168, 169

(2001). A fraud claim accrues at the time the fraud is committed, i.e. at the time the defendant makes a knowingly false statement of fact with the intent to induce reliance on that statement. *New York City Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 85, 715 N.Y.S.2d 232 (4th Dep't 2000). Each of the alleged knowingly false statements made by Schlein in connection with the publication of "Find it Online" occurred on or before December of 1998, more than six years before the filing of Kwan's original complaint in this action. Even if Schlein employed "fraud, concealment, or deception" to prevent Kwan from learning of his allegedly fraudulent promises, which would toll the statute of limitations, *see Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713, 719, 720 (1978), Kwan acknowledges that she was informed on December 23, 1998—more than six years before the original complaint was filed—that the promises of co-authorship would not be honored.[7]

Kwan apparently also claims fraud in connection with the publication of later editions of "Find it Online," a claim that if otherwise valid would not be time-barred. *See* Compl. ¶¶ 16, 17, 20. Kwan's theory in this regard seems to be that Schlein's earlier promise of co-authorship reared its fraudulent head once again when that promise was dishonored as to future editions. But this fraud-by-hindsight theory is untenable because it does not change the fact that all of the fraudulent statements were made in 1998. That those statements proved relevant to future conduct does not mean that Kwan's claim accrued at the time of such future conduct, because it is the statements themselves

that constitute the fraud. Stated in terms of the elements of the tort, Kwan does not allege the requisite material misrepresentation in connection with Schlein's later assertions of authorship, *see Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir.2000), and therefore cannot claim fraud in connection with those misrepresentations.

d. Tortious Interference with Precontractual Relations

█ As best as the Court can understand, Kwan claims that both Schlein's attempts to copyright "Find it Online" and his ongoing attempts to publicize his sole authorship of the book constitute tortious interference with precontractual relations. Compl. ¶¶ 14, 15. "New York recognizes a cause of action for interference with precontractual relations 'where a party *would* have received a contract but for the malicious, fraudulent and deceitful acts of a third party.'" *Gertler v. Goodgold*, 107 A.D.2d 481, 489–90, 487 N.Y.S.2d 565 (1985) (quoting *Union Car Advertising v. Collier*, 263 N.Y. 386, 189 N.E. 463 (1934)).

█ Plaintiff's claim fails for several reasons, most obviously because there is no "third party" involved in this case; Schlein may have breached his contract with Kwan or done violence to that contract in some other way, but he cannot have tortiously interfered with his own contract (or, by extension, his own precontractual negotiations). *See John F. Dillon & Co., LLC v. Foremost Mar. Corp.*, No. 02–Civ.–7803, 2004 WL 1396180, *11, 2004 U.S. Dist. LEXIS 11383 at *32 (S.D.N.Y. June 18, 2004) (citing *Klein v. Jostens, Inc.*, No. 83–Civ.–5351, 1985 WL 1865, *1, 1985 U.S. Dist. LEXIS 18115 at *2

---

7. Although Kwan has listed a separate claim for "misrepresentation," her fraud and misrepresentation claims are indistinguishable in terms of the factual allegations underlying them. In any event, misrepresentation claims are subject to the six-year statute of limitations for fraud, *see Santiago*, 725 N.Y.S.2d 599, 749 N.E.2d at 169, and therefore Kwan's misrepresentation claim is similarly time-barred.

(S.D.N.Y. July 9, 1985)). Furthermore, any precontractual negotiations that may have occurred between Kwan and Schlein occurred in 1998, and are therefore barred by the three-year statute of limitations. *See Radin v. Albert Einstein College of Med. of Yeshiva University,* 04–Civ.–704, 2005 WL 1214281, *15, 2005 U.S. Dist. LEXIS 9772 at *51 (S.D.N.Y. May 20, 2005); *Demas v. Levitsky,* 291 A.D.2d 653, 658, 738 N.Y.S.2d 402 (3d Dep't 2002) (citing *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993)). Similarly, Schlein's efforts to copyright "Find it Online," even if they could give rise to a tortious interference claim, occurred in 1999, well more than three years before the filing of the complaint. Moreover, those efforts, as well as any ongoing efforts made by Schlein to publicize his authorship of "Find it Online," occurred *after* any alleged contract arose and therefore cannot support a claim for interference with precontractual relations.

e. Defamation

■ Kwan also asserts that Schlein defamed her, seemingly on the theory that the failure to give her proper credit for co-authoring "Find it Online" was libelous. *See* Compl. ¶¶ 15, 18. Schlein responds by contending that Kwan has not pled all the elements of defamation and that, in any event, her claim is barred by the one-year statute of limitations. N.Y. CPLR 215(3); *Firth v. State,* 98 N.Y.2d 365, 747 N.Y.S.2d 69, 775 N.E.2d 463, 464 (2002). As to the latter claim, Schlein is mistaken because the tort of defamation arises anew upon any republication of the defamatory material. *See Rinaldi v. Viking Penguin, Inc.,* 52 N.Y.2d 422, 434–35, 438 N.Y.S.2d 496, 420 N.E.2d 377 (publication of paperback edition of defamatory material constituted a republication for statute of limitation purposes). Since Kwan has asserted that the most recent edition of "Find it Online"

failing to properly credit her was published in August of 2004, just five months before she filed her initial complaint in this action, her claim for defamation—at least insofar as it applies to that particular edition—is timely.

■ However, Kwan's claim is dismissed because she has not sufficiently pled defamation. In New York, the elements of a defamation claim are (i) a false statement; that (ii) is published without privilege or authorization to a third party, (iii) is made at least negligently and (iv) either causes special harm or constitutes defamation per se. *Dillon v. City of New York,* 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1st Dep't 1999). Kwan cannot satisfy the first element because she does not point to any defamatory statements made by Schlein. That Schlein failed to credit her for allegedly co-authoring "Find it Online" is not a statement; nor does it constitute an omission that renders a statement about Kwan false. *Cf. Denman v. Franks,* No. 75–Civ.–4595, 1976 WL 1288, *2, n. 1, 1976 U.S. Dist. LEXIS 15461 at *4 n. 1 (S.D.N.Y. Apr.22, 1976) (noting that, since "a charge of libel must allege that the libelous material concerns plaintiff," the plaintiff had not sufficiently plead libel because he had "claimed the opposite, that the book is libelous because it does not mention him"). Therefore, having failed to set forth any false statements made by Schlein regarding herself, Kwan cannot make out a claim for defamation.

f. Nonexistent Causes of Action

■ Kwan's remaining causes of action do not exist as a matter of law. Kwan alleges that BRB and Schlein committed "fraudulent notices of copyright" and "false representation on associated applications," both of which apparently pertain to those defendants' efforts to register and/or notice copyrights for "Find it Online."

Fraudulent copyright noticing is a criminal offense pursuant to 17 U.S.C. § 506(c) for which there is no private cause of action. *See Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 37 n. 10 (2d Cir. 1982); *Barnhart v. Federated Dep't Stores, Inc.,* No. 04–Civ.–3668, 2005 WL 549712, 2005 U.S. Dist. LEXIS 3631 (S.D.N.Y. Mar. 5, 2005). Additionally, "false representation on associated applications" is not a recognized cause of action. Finally, Kwan's claim for conspiracy cannot be maintained because New York does not recognize the tort of civil conspiracy. *New Dimensions Spa, Inc. v. Fitness Place Rockville Centre, Inc.,* 187 A.D.2d 493, 494, 589 N.Y.S.2d 189 (2d Dept.1992).

## III. CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice as to all defendants except Schlein. Additionally, Schlein's motion to dismiss Kwan's complaint is denied insofar as it relates to Kwan's claims for racial discrimination and unfair competition, and granted in all other respects.

SO ORDERED.